PEOPLE v JOHNSON

Docket No. 212482. Submitted June 15, 2000, at Detroit. Decided April 6, 2001, at 9:10 A.M. Leave to appeal sought.

Benny Johnson, Jr., was convicted by a jury in the Oakland Circuit Court, Alice L. Gilbert, J., of two counts of kidnapping and one count of domestic violence. During voir dire, after explaining that the domestic violence charge involved an assault and battery, the court asked the prospective jurors whether, after having heard the charges, "you know of any reason why you should not serve as a juror in this case." None of the jurors responded. When the court asked if any of the prospective jurors previously had been a victim of a crime, Juror 457 responded, "I have been assaulted." The court then asked Juror 457 whether that experience would interfere with her ability to decide this case from the evidence presented in this trial. The juror indicated that she could keep the two separate. When defense counsel asked whether any of the prospective jurors had been threatened by some type of weapon, Juror 457 responded that she had been hit on the head with a gun as a teenager, but that she could put that experience aside. When defense counsel asked whether there was "something weighing so heavily on your mind right now that you might not be able to give full attention to this case" and whether any of the prospective jurors "wouldn't want themselves sitting as a juror if they were the Defendant in a case," Juror 457 did not respond. Defense counsel, after requesting that the court remove one juror for cause and exercising six peremptory challenges, expressed satisfaction with the resulting jury that included Juror 457. Following trial and before sentencing, the defendant moved for a new trial on the basis of juror bias, contending that Juror 457 had not revealed during voir dire that, at the time of the trial, she was a complainant in a domestic violence case and that it had been learned that Juror 457 had told the assistant prosecutor assigned to her case that she was ready to convict the defendant even before the trial began. The prosecution argued that a new trial was not warranted because the juror had revealed that she had been assaulted, had not knowingly given false or misleading answers, and had indicated that she could remain unbiased. The court denied the motion, finding that there was no showing that the juror had knowingly concealed, misled, or given false

information during voir dire and that defense counsel, on learning during voir dire that the juror had been assaulted, did not conduct further inquiry or seek to remove the juror either by a peremptory challenge or a challenge for cause. The defendant appealed.

The Court of Appeals *held*:

Affirmed.

O'Connell, P.J., in a lead opinion stated:

1. The record fails to support the claim that Juror 457 concealed information from the trial court or defense counsel. Juror 457, in response to the court's question whether any of the prospective jurors had been a victim of a crime, truthfully answered that she had been assaulted, and, in response to defense counsel's question whether any of the prospective jurors had been threatened with a weapon, truthfully answered that she had been hit on the head with a gun as a teenager. Although Juror 457 did not volunteer that she had made allegations of domestic violence against her husband, the failure to do so does not support a conclusion that Juror 457 knowingly concealed any information or sought to mislead the court or defense counsel.

2. In view of the failure of defense counsel to further question Juror 457 concerning the nature of the assault after she had indicated that she had been a victim of an assault and battery and the statement of Juror 457 that she could keep her personal life separate from the defendant's case, the defendant did not meet his burden of proving the juror's disqualification.

3. The trial court did not abuse its discretion in refusing to consider defense counsel's claim of being informed that Juror 457 had told the assistant prosecutor in the case in which she was the complainant of her predisposition in the defendant's case. Even if the hearsay problem were resolved, the court could not have considered the information because to do so would constitute impermissible impeachment of a verdict by a juror.

4. The failure of defense counsel to make further inquiry at voir dire did not rise to the level of ineffective assistance of counsel. Because of the assurances of Juror 457 that she could be fair and impartial, there is no reasonable probability that the outcome of the case would have been different had defense counsel made further inquiry.

5. The record does not support the claim of the defendant that the trial court abused its discretion and denied him due process of law in denying his request for a court-appointed investigator.

6. The trial court did not abuse its discretion in barring introduction by the defendant of evidence that he had transmitted herpes to the complainant. The defendant sought admission of that evidence

to support his theory at trial that the complainant made false allegations against him in retaliation for her contracting the disease. The prejudicial nature of the evidence outweighed any probative value, and the barring of that evidence did not significantly hamper the defendant in his attempt to attack the complainant's credibility as a witness. The trial court's ruling did not materially restrict the defendant's right to confrontation.

M. J. KELLY, J., concurred in the result only.

WHITBECK, J., dissenting, stated that the trial court abused its discretion in denying the defendant's motion for a new trial because Juror 457 was subject to a challenge for cause. A party seeking a new trial by reason of discovery after trial of a juror's bias as a result of the juror's interest in a question like an issue that was presented in the case in which the juror sat must establish the existence of that interest and must show that the court or counsel made a reasonably diligent inquiry designed to reveal the bias. Because the failure to ascertain the bias of Juror 457 was not the result of the failure to make a reasonably diligent inquiry but rather was the result of the juror's failure to make a full disclosure of her situation in response to the questions that were asked, the defendant is entitled to a new trial by reason of juror bias.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Thomas R. Grden*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith*), for the defendant on appeal.

Before: O'CONNELL, P.J., and M. J. KELLY and WHITBECK, JJ.

O'CONNELL, P.J. A jury convicted defendant of two counts of kidnapping, MCL 750.349, and one count of domestic violence, MCL 750.81(2). He appeals as of right. We affirm.

I. FACTS

Complainant in this case testified that she dated defendant for about six weeks, but ended the relationship the week before the events at issue. She had a three-year-old son, who was not related to defendant, for whom she had arranged to have defendant's mother to baby-sit while complainant was at work. After the completion of her work day on September 26, 1997, complainant arrived at defendant's mother's house to pick up her son, when she noticed a police car parked outside the house. As she approached the house she saw and heard defendant telling some police officers that everything was all right and that they could not enter the house. After the police left, complainant took her son to her car, and defendant followed and entered the car on the passenger side. Defendant's mother asked complainant to take defendant somewhere for a little while to cool off because a fight had occurred earlier.

After running some errands and getting dinner, complainant returned to defendant's mother's house to drop defendant off. Defendant, however, stayed in the car and wanted to talk with complainant about their relationship. After complainant told defendant that she did not want to get back together, defendant's demeanor changed. He became agitated and began questioning her about who had given her the money for a down payment on her new home. When complainant told him that it was none of his business, defendant took the car keys and refused to give them back unless she told him who gave her the money. At that point, complainant left the car and went into the house to call her brother for a ride home. In

response, defendant threatened to kill complainant's brother if she called him. Complainant became frightened, and her son began crying.

Complainant left the house with her son to find a pay telephone to call her brother. Shortly thereafter, defendant caught up with her and told her that he was not through with her and that he was going to make her suffer. When complainant started walking in another direction, defendant shoved her, blocked her way, and threatened her with a stick. Complainant went back to defendant's mother's house in the hope of making a telephone call. However, when complainant tried to get the telephone, defendant, who seemed to be delusional, was yelling at his mother, who was telling him to leave complainant alone.

Complainant and her son then went back outside because complainant was afraid that defendant was going to hit his mother. Running to the next block, she sought a place to hide. Defendant, however, caught up with her and threatened to kill her if she did not get into the car. She complied, and defendant drove to a gas station. Once there, defendant took the keys and got out of the car. Complainant testified that she tried to escape, but was not able to get her son out of the back seat before defendant returned.

Defendant then drove to a party store, asked an individual who he knew to buy him some beer, and drove back to his mother's house. Defendant drank the beer in his mother's driveway and told complainant that she could have her keys back if she had sex with him. After initially refusing, complainant complied with defendant's demand so that she could take her son home. Afterward, defendant refused to return the keys to the car and laughed at complainant, tell-

ing her that he was not done with her and that she was going to die that night.

Defendant then demanded that complainant take him to her new house. Because of his threats, complainant agreed to do so. All three slept on the floor together that night, defendant with his arm around the complainant's son to prevent complainant from seeking help.

The next morning, defendant woke complainant up and demanded that she take him to work. Along the way, a Warren police officer pulled the vehicle over. Complainant stated that she did not alert the police officer about her situation because she was afraid that defendant would hit her with an empty beer bottle that was in the car. Afterward, she continued to drive to defendant's place of employment and dropped defendant off between two trailers. Defendant went into one of the trailers, about ten feet away. As complainant was attempting to back out, defendant returned and got back into the car. He told her that everything was fine and that his boss said that he could take the day off. He directed her to move the car to the front of the plant so that he could collect his paycheck. When complainant parked the car, defendant took the keys and told her that he was not done with her yet. Complainant thereafter ran from the car, approached a moving truck, and screamed for help. The driver allowed complainant to use his cellular telephone to call her sister. When she saw that defendant had taken her son from the back seat of the car and was walking away, complainant left the truck and ran toward them. Defendant refused to return her son to her unless she agreed to

drive him to his brother's house. Our of fear and concern for her son, she agreed.

At defendant's direction, complainant began driving around. When defendant became unhappy about complainant's driving, he grabbed the wheel and turned into a parking spot. He grabbed her, flipped her over, slammed her into the passenger seat, and began to choke her. Complainant's son begged defendant not to kill his mother. Eventually defendant stopped.

During the struggle, complainant's kicking cracked the car's windshield. After visiting two repair shops and a fast-food restaurant, defendant eventually calmed down, and they agreed that she would drop him off at his mother's house. When they arrived, defendant's mother came out and told defendant that the police were looking for him and that complainant's mother was waiting for her at the police station. En route to the station, defendant instructed complainant to tell the police that they had merely had a lover's quarrel and that a stone had hit the windshield at defendant's place of employment. At the police station, complainant spoke with the officers, told them what had happened, made a written statement, and went to a hospital. Complainant also testified that she was five weeks' pregnant with defendant's child at the time of the incident and that defendant knew it. At one point during the incident, defendant threatened to punch her in the stomach.

The prosecution charged defendant with first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(f), felonious assault, MCL 750.82, two counts of kidnapping, MCL 750.349, and domestic violence, MCL 750.81(2). The jury acquitted him of the CSC I and felonious assault charges, but convicted him

of both counts of kidnapping and domestic violence. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of ten to thirty years for each of the kidnapping convictions and ninety-three days for the domestic assault conviction.

## II. JUROR 457

Defendant first contends that he is entitled to a new trial because one of the members of the jury did not reveal until after trial that she had been a complainant in a domestic violence prosecution. According to defendant, the juror concealed facts from the court that, if she had revealed them, would have led defense counsel to challenge her for cause. The trial court denied defendant's motion for a new trial on the issue. We review a trial court's ruling on a motion for a new trial for an abuse of discretion. *People v Jones*, 236 Mich App 396, 404; 600 NW2d 652 (1999). We find no error requiring reversal.

During voir dire, the jurors learned that one of the charges against defendant was domestic violence involving an assault and battery. The trial court then asked the jury, "[N]ow that you have heard all of the charges in this case do you know of any reason why you should not serve as a juror in this case?" None of the jurors responded. When the trial court then asked, "Are there any among you who have been previously a victim of a crime?" Juror 457 responded, "I have been assaulted." The following colloquy then occurred:

> *The Court:* By virtue of that experience, would you be thinking about that experience and would it interfere with

your ability to listen to the facts of this case and decide this case from the evidence here?

*Juror*: No, I can keep it separate.

*The Court*: Okay. You can keep it separate, good. Anyone else?

When the prosecutor questioned the prospective jurors, she asked whether they would have any difficulty sitting on a jury where the defendant was charged with felonious assault and assault and battery domestic violence. None of the jurors responded.

When defense counsel questioned the jurors, he asked, "Has anyone in this jury box every [sic] been where you felt you were threatened with some type of weapon?" Juror 457 responded that she had been hit in the head with a gun as a teenager, but stated that she could put it aside. When defense counsel asked whether any of the prospective jurors had "something weighing so heavily on your mind right now that you might not be able to give full attention to this case" and "wouldn't want themselves sitting as a juror if they were the Defendant in a case," Juror 457 did not respond. The trial court also asked each of the newly seated jurors if there were any reasons why they should not serve as a juror in the case. Defense counsel, after requesting the court to remove one juror for cause and exercising six peremptory challenges, expressed satisfaction with the jury.[1]

After trial, and before the sentencing hearing, defendant moved for a new trial on the basis of juror bias, contending that Juror 457 did not reveal during

---

[1] Notably, when responding to the trial court's inquiry regarding the composition of the jury shortly before the jury was sworn, defense counsel replied that he was "very satisfied" with the jury panel.

voir dire that, at the time of the trial, she was a complainant in a domestic violence case and that the same special unit of the office of the Oakland County Prosecuting Attorney was prosecuting that case. In response, the prosecutor stated that a new trial was not warranted because Juror 457 revealed during voir dire that she had been the victim of an assault and thus had not knowingly given false or misleading answers. The prosecutor emphasized the juror's statement that she could remain unbiased and the fact that defense counsel did not question the juror further. The prosecutor, who was not involved in Juror 457's domestic violence case, further asserted that she had not cooperated with the prosecution in the case against her husband. In reply, defense counsel contended that he had learned that the juror had told the assistant prosecuting attorney assigned to her case that she was ready to convict defendant even before the trial began. The trial court observed:

> As to the issue of juror bias, this Court finds such argument without merit. The Defendant argues that he was denied an impartial jury panel as a result of Juror #457's bias. There has been no showing that the Juror knowingly concealed, mislead [sic] or gave false information during the voir dire. In fact, when the Juror notified the Court that she was the victim of an assault, the Defense Counsel did not conduct further inquiry and failed to exercise a preemptory [sic] challenge or challenge for cause. Moreover, as a result of the disclosure by Juror #457, this Court asked whether the Juror could remain fair and impartial. Juror #457 responded that she could.

We agree with the trial court and decline to reverse on this issue. Our review of the record did not reveal, as defendant asserts, that Juror 457 "concealed" information from the trial court. When the court asked the

juror whether she had "been previously a victim of a crime," she responded, "I have been assaulted." When defense counsel asked the juror whether anyone had ever threatened her with a weapon, she admitted that someone had hit her on the head with a gun when she was a teenager. The juror did not, however, reveal that she had made allegations of domestic violence against her husband in the past.[2] Nevertheless, in our view, the juror's history as a victim of domestic violence was there for defense counsel to discover through further questioning. Defendant correctly argues that jurors have a duty to reveal relevant information, even though the information is personal or embarrassing. *People v DeHaven*, 321 Mich 327, 334; 32 NW2d 468 (1948). Nevertheless, Juror 457 truthfully answered the trial court's question. That defense counsel did not ask more specific questions to learn the full details of the juror's past experiences did not, in our view, constitute concealment on her part.[3]

---

[2] Apparently, she later denied to authorities that the episode ever happened, she recanted at a preliminary examination, bonded her assailant, and was uncooperative with the prosecutor.

[3] Our dissenting colleague opines that defense counsel inquired with reasonable diligence into Juror 457's background. Our review of the record, however, indicates to the contrary. We simply do not consider defense counsel's failure to inquire further, on learning that the juror had been the victim of violence in the past, as diligent. We are not of the opinion, as the dissent suggests, that defense counsel was required to read the juror's mind or "engage in a far-flung fishing expedition." *Post* at 285. However, follow-up questioning regarding the juror's response that she had been assaulted would have been appropriate. For the same reason, we reject the dissent's assertion that the juror's admission that she had been assaulted in the past "gave no clue" that further inquiry was necessary. *Post* at 286.

The cornerstone of our dissenting colleague's argument regarding due diligence is that "[t]here is no evidence that any additional questioning during voir dire would have revealed that Juror 457 could have been challenged for cause." *Post* at 279. We strenuously disagree with this line of reasoning. The dissent fails to recognize that defendant had ample oppor-

This is not a case, as in *DeHaven, supra,* where jurors answered questions falsely and otherwise failed to disclose information that would have revealed their relation to a person who had committed a crime that was similar to the one for which they were to sit as jurors. Moreover, this case is distinguishable from *People v Hannum,* 362 Mich 660, 667; 107 NW2d 894 (1961), where our Supreme Court stated: "That the lack of disclosure of the pertinent fact can be attributed to failure to expressly ask the prospective juror about it can hardly be thought to have insured an impartial trial . . . ." In the present case, the court did ask the potential jurors whether any of them had ever been the victim of a crime, and

---

tunity to challenge Juror 457 for cause solely on the basis of her candid admission that she had been assaulted in the past. Alternatively, defendant could have challenged Juror 457 for cause if he had posed further inquiry regarding the nature of the admitted assault. In our view, granting defendant a new trial under these circumstances, where he (1) neglected to exercise a challenge for cause, and (2) expressed satisfaction with the jury as impaneled, would be tantamount to allowing defendant to build error into the jury selection process. This we will not do. See, generally, *People v Hubbard (After Remand),* 217 Mich App 459, 466; 552 NW2d 493 (1996) (an expression of satisfaction with the jury as impaneled may waive a defendant's right to challenge the composition of the jury); *People v DePlanche,* 183 Mich App 685, 691; 455 NW2d 395 (1990) (the defendant failed to show he was denied right to an impartial jury where defense counsel expressed satisfaction with the jury panel and failed to take appropriate action to remove jurors the defendant claimed were not impartial); *People v Acosta,* 16 Mich App 249, 250; 167 NW2d 897 (1969) (defendant who announced satisfaction with the jury at close of voir dire waived any error relating to trial court's refusal to give requested instruction to venire); *People v Russell,* 182 Mich App 314, 326; 451 NW2d 625 (1990) (SAWYER, J., dissenting) (defendant who "affirmatively demonstrated" satisfaction with the jury panel by failing to use peremptory challenges and "explicitly stat(ing) to the trial court that he was satisfied with the jury," waived issue relating to composition of jury), rev'd 434 Mich 922 (1990) for the reasons set forth in the dissent of SAWYER, J.

Juror 457 answered truthfully that she had been the victim of assault in the past.[4]

---

[4] We reject the dissenting opinion's suggestion that Juror 457 was not forthright. We recognize that in certain circumstances, a juror's wilful failure to disclose relevant information may warrant a new trial. However, in the instant case Juror 457, on being questioned by the trial court and defense counsel, disclosed that she was assaulted in the past. Consequently, Juror 457 cannot be said to have concealed or misrepresented any information sought by either the trial court or defense counsel. In our view, the dissent's veiled implication that Juror 457 was less than forthright is untenable.

Moreover, the dissent's attempt to analogize the present case to *DeHaven*, *supra*, and *Hannum*, *supra*, is patently unsuccessful. For instance, in *DeHaven*, the juror at issue was related to an individual who had been convicted of statutory rape. *DeHaven*, *supra* at 331. While being questioned during voir dire, the juror gave false and misleading answers. For example, after the trial court pointedly asked the juror about "anything that has happened to any members of your family that would make you feel different about this case than others?" the juror, despite knowing his cousin was convicted of a crime identical to that of which the defendant was charged, responded in the negative. *Id.* at 330. Similarly, when specifically asked if his knowledge of any other case would influence his verdict, the juror responded in the negative. *Id.* Similarly, in *Hannum*, one of the jurors, when filling out a required questionnaire asking specifically about employment status, deliberately failed to disclose that he was a township police officer. This information was not discovered during voir dire. *Hannum*, *supra* at 666. Conversely, the instant case presents no such evidence of purposeful deceit on the part of a juror.

Interestingly, the dissent accords little weight to the fact that Juror 457 clearly admitted having been assaulted on two different occasions. That Juror 457 did not articulate specifically that she was the victim of a *domestic* assault is attributable more to defendant's failure to specifically question her in this regard, rather than to any intentional concealment on her part.

A necessary implication of the dissent's argument is that assault and *domestic* assault are distinct and separate entities. We find this line of reasoning baffling. By its very nature, the crime of *domestic* assault is comprised of an assault. See MCL 750.81(2). Juror 457 clearly admitted having been assaulted. The dissent's persistence in maintaining this illusory distinction is meritless. We find no cognizable difference between assault and domestic assault. Had Juror 457 deliberately chosen to withhold information like the jurors in *DeHaven*, *supra*, and *Hannum*, *supra*, she presumably could have done so. However, in our view, Juror 457's answers reflect a layperson's concerted effort to truthfully answer the trial court's questions in open court while not divulging sensitive and no doubt embarrassing details that are too often associated with domestic assault

Finally, under the facts of this case, the juror's promise to keep the matters of her personal life separate from defendant's case was sufficient to protect defendant's right to a fair trial. See *Patton v Yount*, 467 US 1025, 1034-1035; 104 S Ct 2885; 81 L Ed 2d 847 (1984) (distinguishing between jurors with fixed opinions and those without fixed opinions); *Irvin v Dowd*, 366 US 717, 723; 81 S Ct 1639; 6 L Ed 2d 751 (1961) ("It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."); *People v Lee*, 212 Mich App 228, 248-252; 537 NW2d 233 (1995). Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence. *People v Collins*, 166 Mich 4, 9; 131 NW 78 (1911); *People v Walker*, 162 Mich App 60, 63; 412 NW2d 244 (1987). In light of defendant's failure to further question the juror after she admitted that she had been the victim of an assault in the past, and the juror's statement that she could keep her personal life separate from defendant's case, defendant did not meet his burden of proving the juror's disqualification.[5]

---

matters. In our view, the dissent does a great disservice to the average civilian juror's attempts to properly answer questions put to her during the voir dire process by criticizing Juror 457's choice of words with the benefit of hindsight.

[5] Our dissenting colleague devotes considerable effort to a discussion of MCR 2.511(D)(13) and criticizes us for failing to do the same. The dissent, however, disregards certain principles basic to our jurisprudence: (1) defendant bears the burden of proving a juror's disqualification, *Collins, supra* at 9; *Walker, supra* at 63; (2) our review of a trial court's rulings on challenges for cause on the basis of bias, as well as a court's ruling on a motion for a new trial, is for an abuse of discretion, *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000); *Jones, supra* at 404; (3) a "trial court's determination of a juror's ability to render an impartial verdict is reversed only where an appellate court finds a clear abuse of

discretion," *People v Johnson,* 103 Mich App 825, 830; 303 NW2d 908 (1981); and (4) reviewing courts give great deference to the superior ability of the trial court in matters relating to credibility, *id.; People v Eggleston,* 149 Mich App 665, 671; 386 NW2d 637 (1986). In our opinion, jurors with real life experiences, who acknowledge that they can be free of bias and prejudice, can and do make excellent jurors, and the trial court was in the best position to make this determination. *Lee, supra* at 251.

The dissent suggests that under MCR 2.511(D), a party may challenge a juror for cause at any time during the proceedings. *Post* at 281. However, even a cursory reading of that rule reveals that it governs the jury selection process. Postverdict biases or prejudices are not determined by use of a jury selection court rule. The dissent has employed this court rule, along with its assertion that Juror 457 withheld relevant information, in an attempt to justify its conclusion. We decline to follow the dissent's invitation to rely on dicta, analogy, and implication to create a new rule of law that would allow defendant in this case to now challenge the juror for cause. While we admire the dissent's tenacity, we find its reasoning to be unsupported. While a defendant may move for a new trial pursuant to MCR 2.611, we decline to hold that a defendant may challenge a juror for cause after the jury has rendered its verdict when the defendant failed to adequately utilize the challenge for cause process in the first instance.

A review of footnote 54 in our dissenting colleague's opinion, *post* at 288, demonstrates that he has inferred from our opinion the proposition that juror bias may be addressed only during voir dire. We find this to be an incorrect statement of the prevailing law in Michigan. Rather, it is clear that allegations of juror bias that result from a juror's deliberate withholding of pertinent information may serve as grounds to challenge the jury's verdict at any point in the proceedings. See *Hannum, supra,* and *DeHaven, supra.* That we decline to reverse defendant's convictions under the present circumstances, where he (1) failed to exercise challenges for cause at the proper procedural interval and (2) expressed unequivocal satisfaction with the jury as impaneled, should not be interpreted as suggesting that we are not cognizant of this well-settled proposition.

In its goal to reverse the judgment of the lower court, the dissenting opinion minimizes the juror's admission that she had been assaulted. We cannot ignore her answers to the court's questions, and we will not presume that the juror's past assaults precluded her from rendering a fair and impartial verdict. We recognize that *People v Daoust,* 228 Mich App 1, 7-9; 577 NW2d 179 (1998), states that a defendant is entitled to relief when a juror that the defendant could have challenged for cause was allowed to serve on the jury. However, defense counsel in this case did not meet his burden of establishing the grounds for a challenge for cause during the voir dire process, and we concur with the trial court's conclusion that the juror did not lie or conceal any information. The trial court, which was in the best position to assess the juror, accepted her statement that she would keep her personal life separate from defendant's trial. We cannot accept a process that would excuse a defense attorney for failing to ask

During the hearing on defendant's motion for a new trial, defense counsel asserted that the juror "apparently told the prosecutor assigned to her case that she was ready to hang [defendant] before the trial even began . . . ." When the trial court questioned defense counsel regarding the source of the statement, he responded only that the statement was true "according to what I was told." The prosecutor denied that the juror ever made such a statement to him. Defendant seizes on this discussion as further evidence for the need to reverse and remand for a new trial. Even if we were to disregard that the alleged statement was not a matter of record, we would nevertheless decline to accept defendant's argument. A juror may not impeach a verdict through testimony or affidavit. *Beaubien v Detroit United R Co*, 216 Mich 391, 397-398; 185 NW 855 (1921); *People v Stimer*, 82 Mich 17, 19; 46 NW 28 (1890). As our Supreme Court explained in *People v Pizzino*, 313 Mich 97, 105; 20 NW2d 824 (1945), "[t]o permit this would open the door for tampering with the jury subsequent to the return of their verdict." Therefore, even if the juror had reduced the alleged double hearsay statement to affidavit form, or had she provided testimony to the same effect, the trial court could not have considered it.[6] The trial court did not abuse its discretion in deny-

___

follow-up questions and thereby plant the seeds for a motion for a new trial after the defendant is convicted. Therefore, assuming, without deciding, that Juror 457 was "interested in a question like the issue to be tried," MCR 2.511(D)(13), defense counsel did not meet its burden of establishing that the juror was removable for cause. Our conclusion is limited to the facts of this case, and we do not foreclose the possibility of a contrary result under different factual circumstances.

[6] We acknowledge that a narrow exception exists to the general rule that a juror may not impeach a verdict. A juror may impeach a verdict where the evidence involves a matter inhering in the verdict and concerns

ing defendant's motion for a new trial.[7]

Moreover, we do not conclude that defense counsel's failure to make a further inquiry into the matter rose to the level of ineffective assistance of counsel. First, we note that an attorney's decisions relating to the selection of jurors generally involve matters of trial strategy, *Huls v Lockhart*, 958 F2d 212, 214-215 (CA 8, 1992); *Palacio v State*, 333 SC 506, 516-517; 511 SE2d 62 (1999); *People v Hebein*, 111 Ill App 3d 830, 848; 444 NE2d 782 (1982), which we normally decline to evaluate with the benefit of hindsight, *People v Williams*, 240 Mich App 316, 331-332; 614 NW2d 647 (2000). Second, Juror 457 informed the court that she could keep her personal life separate from defendant's case, and she answered affirmatively when the court asked whether she could be fair and impartial. On the basis of the juror's assurances, and the trial court's acceptance of her assurances, we see no reasonable probability that the outcome of the case

---

overt acts, accessible to all the jurors. *People v Budzyn*, 456 Mich 77, 91; 566 NW2d 229 (1997); *People v Graham*, 84 Mich App 663, 666; 270 NW2d 673 (1978). This exception does not apply in the present case, however, because the allegation, that the juror had decided defendant's guilt before the trial began, involved her alleged subjective feelings, which were not within the jury's knowledge. Defendant does not allege that the juror shared her alleged preconceived opinion with any other jurors.

[7] Our colleague in dicta implies that defendant is entitled to a new trial because he was "actually prejudiced" by the juror in question. We disagree. The dissent's finding of actual prejudice is based solely on the double hearsay statement allegedly made by Juror 457. The statement the dissent points to as evidence of actual prejudice is one allegedly made by Juror 457 to one prosecutor, repeated to another, and presented to the trial court by defense counsel during the hearing on defendant's motion for a new trial. We agree with the trial court that this double hearsay statement is insufficient to demonstrate actual prejudice. Other than defense counsel's unsubstantiated allegations, there is no record evidence to demonstrate that Juror 457 intended to convict defendant regardless of the evidence. In our view, the double hearsay statement does not serve to overcome the well-settled presumption of impartiality accorded to jurors.

would have been different. *Strickland v Washington,*
466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984);
*People v Stanaway,* 446 Mich 643, 687-688; 521 NW2d
557 (1994).[8]

### III. OTHER ISSUES

Defendant next argues that the trial court abused
its discretion and denied him due process of law in
denying his request for a court-appointed investigator.
We disagree. Defendant's claim rests on his specula-
tion that an investigator would have retraced the
events during the relevant period and would have
found witnesses to testify that defendant did not com-
mit the acts that the prosecution alleged. Defendant's
claim relies on pure conjecture. He therefore did not
show that, under the facts and circumstances of the
case, an investigator was necessary to afford him due
process or that the trial court's ruling substantially
prejudiced him. *Mason v Arizona,* 504 F2d 1345,
1352-1353 (CA 9, 1974) (requiring the defendant to
show that the denial "substantially prejudiced" him);
*People v Blackburn,* 135 Mich App 509, 520-521; 354
NW2d 807 (1984).

Finally, we disagree with defendant that the trial
court erred in barring evidence to establish that com-
plainant had herpes. Before trial, the prosecutor

___

[8] In part IV of his opinion, our dissenting colleague accuses us, among
other things, of failing to address the relevant law, overlooking a court
rule, and ignoring defendant's arguments on appeal. The dissent further
claims that we are endorsing a process that effectively permits jurors to
avoid "speak[ing] the truth" (emphasis omitted). *Post* at 285. Perhaps most
offensive is the dissent's claim that we have adopted a rule that precludes
a defendant from ever seeking a new trial after voir dire on the basis of
subsequently discovered evidence of bias. A review of this opinion reveals
that these accusations are completely unfounded.

moved to exclude any evidence that defendant had transmitted herpes to complainant. The trial court granted the motion, apparently concluding that the evidence was irrelevant. Defendant's theory at trial was that complainant made false allegations against him in retaliation for her contracting the disease. Therefore, the evidence would have been relevant for purposes of establishing that complainant was biased and had fabricated her testimony. Nevertheless, in our view, when balanced against the inflammatory nature of the evidence—complainant's alleged contraction of a sexually transmitted disease—we conclude that the prejudicial nature of the evidence outweighed any probative value. See MCL 750.520j(1)(a), (b). Further, our review of the record indicates that defense counsel thoroughly cross-examined complainant over a two-day period in an attempt to impeach her testimony and discover whether she fabricated her testimony. Defendant's inability to introduce evidence of complainant's alleged contraction of the disease from defendant did not significantly hamper his attempt to attack complainant's credibility as a witness.

Defendant argues for the first time on appeal that the court's ruling excluding evidence of complainant's alleged disease violated the Confrontation Clause, US Const, Am VI. Because defendant did not raise this argument below, our review is for plain error that affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). On the basis of our foregoing analysis, we do not conclude that the trial court's ruling materially restricted defendant's right to confrontation and therefore we find no error requiring reversal.

Affirmed.

M. J. KELLY, J. I concur in the result only.

WHITBECK, J. (*dissenting*). I respectfully dissent. Defendant Benny Johnson, Jr., claims on appeal that he was denied a fair trial by an impartial jury because one of the jurors in his case, Juror 457, was also a complainant in a domestic violence case, which occurred in the same county and was prosecuted by the same division of the prosecutor's office at the same time Johnson was prosecuted. Johnson asserts that he did not learn about Juror 457's background until after the jury, including Juror 457, convicted him, and so lacked an opportunity to challenge her for cause during voir dire. Even when applying a narrow interpretation of relevant case law and of the applicable court rule, I would reverse Johnson's conviction and remand for a new trial.

### I. BASIC FACTS AND PROCEDURAL HISTORY

The lead opinion sets out the facts of the case in some detail. I repeat them here so that any reader, including those in a reviewing court, will have the benefit of the full context of the juror bias issue. During voir dire, the venire members learned that the prosecutor had charged Johnson with domestic violence involving an assault and battery against his former girlfriend. Immediately thereafter, the trial court asked the venire members "now that you have heard all of the charges in this case do you know of any reason why you should not serve as a juror in this case?" No one responded to this question. The trial court then asked, "Are there any among you who have been previously a victim of a crime." In response, a venire member who was later identified as Juror 457

responded, "I have been assaulted," prompting the following colloquy:

> *The Court*: By virtue of that experience, would you be thinking about that experience and would it interfere with your ability to listen to the facts of this case and decide this case from the evidence here?
>
> *Juror*: No, I can keep it separate.
>
> *The Court*: Okay. You can keep it separate, good. Anyone else?"

The trial court also inquired, "Do [sic] each of you feel that you are, that you can be fair and impartial and that you are fair and impartial?" The transcript does not indicate that any venire member responded to this question.

After reminding the venire of the charges in the case, the prosecutor asked the venire members if any one of them would "have a problem sitting on that type of jury listening to that type of evidence." Again, no one responded. When defense counsel asked the venire members if any of them had ever been made to feel "threatened with some type of weapon," Juror 457 responded that she had been hit on the head with a gun as a teenager but could disregard the experience. Defense counsel also asked whether any of the venire members had "something weighing so heavily on your mind right now that you might not be able to give full attention to this case" and "wouldn't want themselves sitting as a juror if they were the Defendant in a case." Juror 457 did not respond to these questions. Defense counsel, after asking the trial court to remove one venire member from the jury for cause and exercising six peremptory challenges, expressed satisfaction with the jury.

Before sentencing, Johnson moved for a new trial on the basis of juror bias. Johnson claimed that he did not know until after he was convicted that Juror 457, at the time of the trial, was the complainant in a domestic violence prosecution in Oakland County, making her incompetent to serve on the jury. The prosecutor argued to the trial court that Johnson was not entitled to a new trial because Juror 457 revealed during voir dire that she had been the victim of an assault. As a result, the prosecutor contended, Juror 457 had not knowingly given false or misleading answers to voir dire questions. Further, the prosecutor argued, a new trial was not necessary because Juror 457 stated that she would not be biased, defense counsel did not ask her any additional questions, and the defense could have used a peremptory challenge to excuse her from the jury. Finally, the prosecutor, who was not involved in the Oakland County domestic violence case in which Juror 457 was the complainant, added that Juror 457 had not cooperated with the prosecution in that separate case.

Defense counsel then asserted that he had learned that Juror 457 had told the assistant prosecuting attorney assigned to prosecute the Oakland County case against her abuser that she was ready to convict Johnson in this case even before the trial began. Defense counsel also claimed that, had he known that Juror 457 was a prosecution witness in a domestic violence case, he never would have allowed her to remain on the jury, i.e., he would have exercised a peremptory challenge against her.

Following the hearing, the trial court entered an opinion and order denying Johnson's motion for a new trial, observing in relevant part:

> As to the issue of juror bias, this Court finds such argument without merit. The Defendant argues that he was denied an impartial jury panel as a result of Juror #457's bias. There has been no showing that the Juror knowingly concealed, mislead [sic] or gave false information during the voir dire. In fact, when the Juror notified the Court that she was the victim of an assault, the Defense Counsel did not conduct further inquiry and failed to exercise a preemptory [sic] challenge or challenge for cause. Moreover, as a result of the disclosure by Juror #457, this Court asked whether the Juror could remain fair and impartial. Juror #457 responded that she could.

## II. STANDARD OF REVIEW

Johnson argues that he was denied his right to a trial by an impartial jury[1] because he could have successfully challenged Juror 457 for cause under MCR 2.511(D)(3), (4), (5), and (13). Thus, he claims, the trial court erred in denying his motion for a new trial. This Court reviews a trial court's decision on a motion for a new trial for an abuse of discretion.[2]

### III. RIGHT TO A FAIR AND IMPARTIAL JURY

#### A. OVERVIEW

This appeal has both a procedural and substantive legal context. The procedural context relies wholly on

---

[1] US Const, Am VI; Const 1963, art 1, § 20; *Duncan v Louisiana*, 391 US 145, 149; 88 S Ct 1444; 20 L Ed 2d 491 (1968); *People v Clark*, 220 Mich App 240, 245-246; 559 NW2d 78 (1996).

[2] *People v Leonard*, 224 Mich App 569, 580; 569 NW2d 663 (1997).

the merit of the legal proposition at issue in this appeal, described below. Pursuant to MCR 6.431(B), a trial court may grant a new trial to a criminal defendant on the basis of "any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." The trial court denied Johnson's motion because, it concluded, the juror bias issue in this case would not merit reversal on appeal or because Juror 457's service on the jury did not implicate either of these conditions meriting a new trial.

From my perspective, the trial court erred in denying the motion for a new trial because it misunderstood the substantive legal context surrounding Juror 457, namely, whether her presence on the jury denied Johnson his constitutional right to a fair and impartial jury.[3] The little Michigan case law that exists to define when a defendant has been denied this right nevertheless does so in a fairly simple and complete manner. In *People v Daoust*,[4] this Court unequivocally stated that "a defendant is denied his right to an impartial jury when a juror removable for cause is allowed to serve on the jury. In some circumstances, this is true even when the information justifying the juror's removal is not discovered until after the trial." The *Daoust* Court rooted its conclusion in the Michigan Supreme Court's decisions in *People v Hannum*[5] and *People v DeHaven*[6] and outlined the two grounds

---

[3] US Const, Am VI; Const 1963, art 1, § 20; see also *People v Schmitz*, 231 Mich App 521, 528; 586 NW2d 766 (1998) ("Without question, a criminal defendant has a constitutional right to be tried by a fair and impartial jury.").

[4] *People v Daoust*, 228 Mich App 1, 8-9; 577 NW2d 179 (1998).

[5] *People v Hannum*, 362 Mich 660; 107 NW2d 894 (1961).

[6] *People v DeHaven*, 321 Mich 327; 32 NW2d 468 (1948).

that a defendant may rely on to establish entitlement
to a new trial. Under *Daoust*, a defendant is entitled
to relief from a verdict "when information potentially
affecting a juror's ability to act impartially is discov-
ered after the jury is sworn" if the defendant can
establish "(1) that he was actually prejudiced by the
presence of the juror in question or (2) that the juror
was properly excusable for cause."[7] By writing this in
the disjunctive, the Court made clear that a defendant
need not prove both conditions before receiving a
new trial.[8] The *Daoust* Court, in dicta, also acknowl-
edged that when a juror lies during voir dire, these
two grounds for a new trial would not necessarily
apply.[9] Minimally, this implies that if a juror, during
voir dire, purposefully withholds information relevant
to whether that juror could act impartially, a defen-
dant need not show prejudice or that the juror could
be challenged for cause under the court rules in order
to receive a new trial.

### B. PREJUDICE

*Daoust* expressly holds that a defendant is entitled
to relief if he can establish that he was "actually
prejudiced" by the juror in question.[10] Johnson briefly
asserts that Juror 457 intended to convict him even
before hearing all the evidence. In my view, a juror
who intends to convict a defendant regardless of the
evidence demonstrates the ultimate level of prejudice

---

[7] *Daoust, supra* at 9, citing *Hannum, supra* at 666-667, and *DeHaven,
supra* at 330-334.

[8] See *Caldwell v Chapman*, 240 Mich App 124, 131; 610 NW2d 264
(2000).

[9] *Daoust, supra* at 9, n 3.

[10] *Id.* at 9.

possible. Without impartiality from each and every juror who sits in judgment of a defendant, neither courts of law nor society at large can or should have any measure of assurance that that jury will render a just verdict. It is extremely easy for a reviewing court to conclude that a guilty verdict may have been warranted in a particular case, regardless of whether the jurors who served as factfinders had preexisting bias. Yet, because we humans are fallible, we *must* adhere to objective standards of fairness to ensure that juries do not make grave mistakes when passing on the question of guilt or innocence.

In this case, Juror 457's expressed intent to convict Johnson without hearing the evidence indicates, in my view, that Johnson established sufficient prejudice to warrant a new trial. Indeed, I would conclude that the fact that the trial court ignored such significant prejudice demonstrates that the trial court abused its discretion in denying the motion for a new trial. Still, the record is incomplete concerning actual prejudice, and Johnson devotes significantly less effort in arguing the prejudice issue than in arguing that he is entitled to a new trial because he could have challenged Juror 457 for cause. I therefore focus my dissent on the challenge-for-cause issue, not on Johnson's less-developed argument concerning actual prejudice. Contrary to the lead opinion's assertion, see *ante* at 259, n 7, I do not therefore base my dissent on the proposition than an unsubstantiated double hearsay statement can be used to disregard the presumption of impartiality.

C. CHALLENGE FOR CAUSE: INTEREST IN ANOTHER, SIMILAR ISSUE

A defendant establishes the second, alternative ground for a new trial under *Daoust* if he can demon-

strate that the juror could have been excused for cause.[11] This Court decided *Daoust* in 1998, after the current version of the court rule, promulgated in 1985, went into effect. *Daoust*, however, does not refer to MCR 2.511(D), which lists thirteen separate grounds that justify excusing a venire member from jury service "for cause," because peremptory challenges were largely at issue in that case. Nevertheless, the explicit holding in *Daoust* does refer to challenges for cause, making it applicable to Johnson's case.

The thirteen grounds identified in MCR 2.511(D) generally specify conditions or factors that reveal that a venire member has a bias that makes that person unfit or legally incompetent to serve on a jury.[12] Johnson claims that four of these grounds would have required the trial court to excuse Juror 457 for cause. I address only the last ground, MCR 2.511(D)(13).

MCR 2.511(D)(13) provides that a juror can be challenged for cause if she "is interested in a question like the issue to be tried." Michigan's appellate courts have not specified the circumstances that demonstrate that a venire member "is interested in a question like the issue to be tried" under this court rule. Nevertheless, the language in MCR 2.511(D)(13) plainly requires the party challenging the person for cause to address only three uncomplicated lines of inquiry.[13] First, what is the issue to be tried? Second, does a similar issue exist elsewhere? Third, is the

---

[11] *Id.*

[12] See 3 Dean & Longhofer, Michigan Court Rules Practice, § 2511.5, pp 172-173.

[13] See, generally, *People v Badour*, 167 Mich App 186, 189; 421 NW2d 624 (1988), rev'd on other grounds sub nom *People v Beckley*, 434 Mich 691; 456 NW2d 391 (1990).

venire member being challenged for cause "interested" in that other, similar issue? The party challenging the venire member satisfies the burden of proof by identifying the issue being tried, showing that it is similar to an issue elsewhere, and demonstrating that the venire member is interested in that other, similar issue.

Not surprisingly, the third line of inquiry is critical because it entails more legal analysis than a raw recitation of facts. Although MCR 2.511 does not define the word "interested" in any of its subsections, the rules of construction require that it be given an ordinary meaning because it is a common word.[14] This meaning can be determined by resorting to a dictionary.[15] *Random House Webster's College Dictionary* (2d ed) defines "interested" as "having an interest or share; concerned," "having the attention or curiosity engaged," or "influenced by personal or selfish motives." That same dictionary's definition of the word "interest," which plays a role in defining the meaning of the word "interested," is even more illuminating. The relevant definitions suggest that to be interested simply means "the state of being affected by something in respect to advantage or detriment" or to be "involved" in something.

Applying this three-part inquiry to Juror 457's circumstances leads me to conclude that she could have been challenged for cause under MCR 2.511(D)(13). First, the issues to be tried in this case were whether Johnson was guilty of kidnapping, first-degree domestic violence, criminal sexual conduct, or felonious

---

[14] *Grievance Administrator v Underwood,* 462 Mich 188, 193-194; 612 NW2d 116 (2000).

[15] *Popma v Auto Club Ins Ass'n,* 446 Mich 460, 470; 521 NW2d 831 (1994).

assault. Second, the domestic violence issue existed elsewhere, in the Oakland County prosecution against Juror 457's abuser. Third, Juror 457 was "involved" in the prosecution of that case because she was the complaining witness, albeit an allegedly uncooperative one. The Oakland County prosecution in which Juror 457 was "involved" also "affected" her because a conviction or acquittal of her abuser would influence whether that individual would be incarcerated, which in turn would determine his ability to harm her.

I agree with the lead opinion that it is possible to argue that there is a dispute in the record regarding what actually occurred between Juror 457 and her abuser in the incident that led to that man's arrest and prosecution in Oakland County. However, neither this Court nor the trial court had to decide the merits of that other case. Rather, the pertinent questions were whether that other case involved an issue similar to at least one issue tried in this case and whether Juror 457 was interested in that case. There is *no* dispute that the allegations and domestic violence charge against Juror 457's abuser were similar to the domestic violence charge in the instant case and that Juror 457 was "interested" in that other case.

Given the answers to these questions, I have no doubt that Johnson could have challenged Juror 457 for cause under MCR 2.511(D)(13).[16] This Court's

---

[16] Although not binding, the dicta in Justice LEVIN's dissent to the Michigan Supreme Court's order reversing the Court of Appeals decision in *People v James*, 436 Mich 851; 460 NW2d 557 (1990), suggests that this is the correct conclusion. In *James*, the defendant was convicted of felony murder, armed robbery, and felony-firearm. *Id.* After the guilty verdict, James learned that one of the jurors who sat on the jury in his case was the complaining witness in another case in which the defendant was charged with armed robbery. *Id.* at 855. During James' trial, this juror testified in the other case. *Id.* Though focusing primarily on other legal issues in the

opinion in *McNabb v Green Real Estate Co*[17] suggests that the trial court, had it been presented with a challenge for cause against Juror 457 on this basis, would have lacked any significant discretion[18] to refuse to remove her from the jury.[19] As it is clear that Johnson was denied his right to an impartial jury because a juror removable for cause was allowed to serve on the jury, I conclude that the trial court abused its discretion in denying the motion for a new trial.

I emphasize that there are two factually relevant cases on this subject, which were decided long before the Michigan Supreme Court promulgated the current version of the court rules in 1985. These cases served as the foundation for this Court's decision in *Daoust*. In the first case, *DeHaven, supra,* the prosecutor charged the defendant with the statutory rape of his thirteen-year-old stepdaughter.[20] Not until after he had

---

appeal, Justice LEVIN, joined by Justices CAVANAGH and ARCHER, intimated that this was sufficient proof under GCR 1963, 511.4(13), the predecessor to MCR 2.511(D)(13), to justify the trial court's decision to grant James a new trial. *Id.* at 855, n 13.

[17] *McNabb v Green Real Estate Co*, 62 Mich App 500, 507; 233 NW2d 811 (1975).

[18] Currently the Michigan Court Rules implicitly provide that upon a demonstration by counsel that a prospective juror fits one of the categories enumerated in MCR 2.511(D)(4)-(13), a trial court *is required to excuse such juror for cause.* This showing is equivalent to proving a biased or prejudicial state of mind.

Ultimately, however, the decision to grant or deny a challenge for cause is within the *sound discretion of the trial court.* Nevertheless, in exercising this discretion, the trial judge is not without constraint. [*Poet v Traverse City Osteopathic Hosp,* 433 Mich 228, 236; 445 NW2d 115 (1989) (emphasis supplied and citations omitted)].

[19] Although this Court decided *McNabb* under GCR 1963, 511.4(13), the relevant language in the old court rule is identical to the current language in MCR 2.511(13). Therefore, there is every reason to believe that *McNabb* applies in this case.

[20] *DeHaven, supra* at 329.

been convicted by a jury did the defendant learn that two of the jurors who convicted him were related to a man who had been convicted in a neighboring county of the statutory rape of five of his daughters, including one who was thirteen years old.[21] One juror on DeHaven's jury, William Haverdink, was the convicted rapist's cousin and the other juror, John Bouws, was the rapist's brother-in-law.[22] During voir dire in the trial court, the following exchange occurred:

> "*The Court*: Mr. Haverdink, you heard my questions?
>
> "*Mr. Haverdink*: I did.
>
> "*The Court*: And [do] you know anything about the case?
>
> "*Mr. Haverdink*: I do not.
>
> "*The Court*: Know any of the parties?
>
> "*Mr. Haverdink*: No.
>
> "*The Court*: Have any business with any of the attorneys?
>
> "*Mr. Haverdink*: No, I don't.
>
> "*The Court*: Do you know of anything that might interfere with your fair and impartial trial of this kind of case?
>
> "*Mr. Haverdink*: I don't
>
> "*The Court*: There is nothing about anything that has happened to any members of your family that would make you feel different about this case than others?
>
> "*Mr. Haverdink*: No.
>
> "*The Court*: You feel in this case you could sit in this case fairly and impartial?
>
> "*Mr. Haverdink*: I can.
>
> "*The Court*: There is no other case you heard about or know about [that] would influence your verdict in any way.
>
> "*Mr. Haverdink*: No.
>
> "*The Court*: Do you have a daughter, do you?

---

[21] *Id.* at 331.

[22] *Id.*

"*Mr. Haverdink*: I have daughters, but they are all married.

"*The Court*: Well, [do] you think that would make any difference in this case?

"*Mr. Haverdink*: It wouldn't.

"*The Court*: Do you know any of these parties I have named here as witnesses?

"*Mr. Haverdink*: No, I don't.

"*The Court*: Have you any challenge now?

"*Mr. Ray*: No.[23]

When the defendant moved for a new trial because Haverdink was biased, the trial court denied the motion, commenting that Haverdink had not been explicitly asked about the offense his relative had committed, he had stated that he would remain unbiased, and any bias he had would have inured to the defendant's benefit.[24] The trial court also denied the motion for a new trial based on Bouws' alleged bias by relying on "similar" reasoning.[25]

On appeal, the Supreme Court in *DeHaven*, citing 31 Am Jur, § 108, pp 638, 639, implicitly rejected the trial court's reasoning that a new trial was not necessary because the jurors gave assurances that they could act impartially.[26] The Court acknowledged that the two jurors in question likely had good reasons not to want to reveal their relationship with a rapist.[27] Nevertheless, the Court quoted two earlier cases[28] for the proposition that jurors must not have an interest

---

[23] *Id.* at 330-331.

[24] *Id.* at 331.

[25] *Id.*

[26] *Id.* at 332.

[27] *Id.* at 334.

[28] *Id.* at 332-333, quoting *Durham v State*, 182 Tenn 577; 188 SW2d 555 (1945), and *People v Troy*, 96 Mich 530; 56 NW 102 (1893).

in a similar case so that they may judge the facts of the case at hand fairly and impartially on the basis of the evidence presented, not on viewpoints cultivated in the similar case. Applying this principle to the facts, the Court held that "the relationship of these two jurors to one who had committed a similar crime was such that it deprived them of the capacity to act impartially."[29]

Under the legal reasoning advanced in *DeHaven*, which I hasten to add is binding precedent,[30] Juror 457 was plainly biased because she was interested in the other domestic violence prosecution. Moreover, if *DeHaven* implies that the degree of relationship between the juror and another matter is relevant, Juror 457 plainly passes this sort of test. Certainly, a woman who is a complainant in a similar domestic violence prosecution occurring *at the same time, in the same county, prosecuted by the same governmental unit as this case* is as closely, if not more closely, related to her abuser than the two jurors in *DeHaven* were related to the convicted rapist. Therefore, the reasoning in *DeHaven* that this relationship deprived the juror of the "capacity to act impartially" applies equally well in this case.

The second relevant case on which this Court relied in *Daoust* is *Hannum, supra*, in which the defendant was charged with and convicted of manslaughter for killing her husband.[31] One of the jurors

---

[29] *DeHaven, supra* at 334.

[30] *People v Beasley*, 239 Mich App 548, 559; 609 NW2d 581 (2000) ("An elemental tenet of our jurisprudence, stare decisis, provides that a decision of the majority of justices of the Michigan Supreme Court is binding on lower courts.").

[31] *Hannum, supra* at 661-662.

who convicted her was a police officer and special deputy sheriff for the area where the defendant committed the crime.[32] Relying on *DeHaven*, the *Hannum* Court concluded that the juror lacked the capacity to be impartial.[33] One interesting aspect of *Hannum* is that the juror in question was not specifically involved in another manslaughter case as a law enforcement officer. Nor is there any indication that he was related by blood or affinity to another person charged with or convicted of committing manslaughter. Rather, the Supreme Court inferred that his interest or involvement in criminal cases *in general* predisposed him to being biased. One lesson I draw from the *Hannum* opinion is that a loose association with another similar case[34] is sufficient to establish that a particular juror cannot be impartial, even without concrete evidence that the juror acted in a biased fashion when deciding the case. Here, there was just such a relationship between Juror 457 and the other Oakland County domestic violence prosecution in which she was involved.

### D. DISCLOSURE DURING VOIR DIRE

*DeHaven* and *Hannum* present reasoning that fits well here and also provide the narrower grounds on which I explicitly dissent in this case. In addition to noting the effect that bias arguably had on each juror's capacity to act impartially, the Court in *DeHaven* and *Hannum* pondered the biased jurors' failure

---

[32] *Id.* at 666.

[33] *Id.*

[34] I do not suggest that all law enforcement officers should be automatically disqualified as jurors.

to disclose information that would have revealed their individual biases in reaching the conclusion that the defendants in those cases were entitled to a new trial. In *DeHaven*, the Court discussed the testimony the jurors gave during voir dire, noting that "[i]t can readily be seen why they did not want to acknowledge relationship to a confessed rapist, but their obligation and duty as jurors transcends in importance their hesitancy in admitting such relationship."[35] Thus, the jurors' failure to reveal that they were related to a rapist played more than a minor part in the Court's decision.

Similarly, before coming to the conclusion that the defendant was entitled to a new trial, the Court in *Hannum* noted that each member of the jury was required to fill out a questionnaire with information about his employment as well as other matters but that the juror in question did not reveal that he was a law enforcement officer.[36] After briefly outlining the circumstances in *DeHaven*, including the fact that the challenged jurors had lied during voir dire, the *Hannum* Court posed and answered a hypothetical question, thereby disposing of the issue:

> Would any experienced trial lawyer, or, for that matter, the public generally, feel differently as to the capacity of a local police officer to sit as a juror and consider impartially the case of a defendant charged with a crime committed in the community? We think not. *That the lack of disclosure of the pertinent fact can be attributed to failure to expressly ask the prospective juror about it can hardly be thought to have insured an impartial trial any more so than in*

---

[35] *DeHaven, supra* at 334.

[36] *Hannum, supra* at 666.

DeHaven, *merely because there the panel members denied such qualification.*[37]

Thus, while the essential capacity of the juror to be fair and impartial was certainly a major consideration in *Hannum*, the Court also paid significant attention to the substance of voir dire in reaching its holding.

Though *Daoust* emphasized that whether the biased juror was allowed to serve was central to whether the defendant was entitled to a new trial, it also implied that courts must address potential juror bias based on information that becomes available *after* voir dire. What was known and what remained undisclosed during voir dire becomes relevant in determining whether there was a constitutional violation.[38] Although not stated in so many words, *Daoust* points to a situation in which, as a matter of trial strategy, a defendant specifically knows of the venire member's bias but explicitly chooses to have that individual serve on the jury. Under *People v Carter*,[39] that tactical decision by a defendant would be considered a technical waiver of the fair and impartial jury issue and would be unlikely to require a new trial. A similar situation might arise if a defendant chose not to delve into the possibility of bias at all, or failed to do so reasonably. Whether and how the defense inquired into bias is relevant in this sort of case.[40]

---

[37] *Id.* at 666-667 (emphasis supplied).

[38] *Daoust, supra* at 9

[39] *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

[40] It is possible that a case might arise in which the prosecutor's or the trial court's questioning during voir dire is relevant to whether the inquiry was reasonably calculated to reveal the bias, i.e., circumstances in which defense counsel or the defendant did not need to ask additional questions because they had already been asked. I also note that diligence during voir dire is irrelevant if a venire member lies.

With these considerations in mind, the rule of law I prefer would require a defendant relying on the second ground for a new trial that this Court articulated in *Daoust*—that a juror could have been challenged for cause under MCR 2.511(D)(13)—to support that argument by showing that the defense conducted voir dire with reasonable diligence.[41] Stated another way, the questioning during voir dire must attempt to discover bias in a reasonable manner. The lead opinion focuses exclusively on whether, during voir dire, Juror 457 told the truth. In one sense, this is a diligence inquiry at the extreme because it goes beyond examining whether any of the parties or the trial court ever could have elicited newly discovered information revealing bias.

Fortunately, I need not decide whether the heavy weight the lead opinion gives this truth/diligence inquiry determines whether Johnson is entitled to a new trial as a matter of law. In this case, it is clear that the trial court and defense counsel made a reasonably diligent inquiry into Juror 457's background and she either minimized or entirely failed to disclose facts that would have shown her "interest" in the same charge for which Johnson was being tried. There is no evidence that any additional questioning during voir dire would have revealed that Juror 457 could have been challenged for cause. As a result,

---

[41] Of course, actual prejudice in terms of having a juror who is biased and acts on that bias appears to be the type of structural, constitutional error that would be subject to a rule of automatic reversal. See *People v Duncan*, 462 Mich 47, 51-52; 610 NW2d 551 (2000). Whether a defendant is entitled to a new trial because prejudice is *presumed* from a juror's eligibility for a challenge for cause under the court rules presents a separate question. Whether a rule of automatic reversal is wise or necessary in such a case is debatable and need not be resolved here.

under the circumstances surrounding this case, I conclude that Johnson is entitled to a new trial.

IV. THE LEAD OPINION

A. OVERVIEW

The lead opinion relies on four interlocking premises: (1) the real legal issue in this case is whether Juror 457 technically told the truth during voir dire, (2) she told the truth, (3) any failure to elicit "additional truth" from her was solely due to defense counsel's performance during voir dire, and (4) as a result, Johnson failed to overcome the presumption that jurors are impartial and competent to serve. While I admit that this is a tidy approach to the appeal, I believe these premises are not well-grounded.

B. THE LEGAL ISSUE

The statement of the issues presented in Johnson's appellate brief asks "where it was not revealed until after the verdict that one of the jurors was a complainant in a domestic violence prosecution at the time of trial, is defendant entitled to a new trial[?]" This is a general statement of the issue, which Johnson then analyzes in greater detail. The facts Johnson relates in his discussion of this issue, including the contrast between Juror 457's actual statements during voir dire and the information she failed to reveal, merely explain why he did not challenge her for cause *during* voir dire.[42] These facts, as inflammatory

---

[42] The trial court record does not clearly relate all the facts surrounding the case in which Juror 457 was the complaining witness. Although Johnson's brief on appeal and exhibits to that brief do relate quite a few addi-

as they may be, do not constitute Johnson's legal argument. Johnson does not argue that he is legally entitled to a new trial merely because Juror 457 concealed her bias and involvement in the prosecution against her abuser. Rather, Johnson states in his brief that his substantive legal argument is that "had the information been revealed during voir dire, [Juror 457] would have been challenged and excused for cause" based on MCR 2.511(D)(3), (4), (5), and (13). This specific legal argument grounded in the court rules supports Johnson's overarching theory that he must have a new trial because Juror 457 cannot be presumed impartial. Thus, in order to determine whether his arguments have merit, those arguments and MCR 2.511 must remain the centerpiece of the analysis in this case.

Yet, the lead opinion fails to examine MCR 2.511(D)(13), or any of the other subsections Johnson cites, in order to determine whether Johnson's arguments have merit. By not examining this court rule, the lead opinion misses the point that MCR 6.431(B) permits a defendant to argue that an error occurred at some earlier stage of the proceedings that merits a new trial, including an error during voir dire as defined by MCR 2.511. By its plain language, MCR 2.511(D) does not attempt to limit the question and effect of juror bias solely to voir dire. Allowing a biased juror to serve at trial taints the verdict, and if objections to juror bias could not ever be raised following voir dire, appellate courts would be forced to

tional facts, this Court cannot consider them on appeal. See *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 18; 527 NW2d 13 (1994).

accept all such tainted jury verdicts because the bias question would be beyond review.

By raising MCR 2.511 in the motion for a new trial, Johnson was not arguing that the trial court should remove Juror 457 from the jury at that time. The jury had already rendered the guilty verdict and had been discharged by the time Johnson moved for a new trial. Rather, Johnson was arguing that his trial was unfair and the jury's verdict unreliable because Juror 457 was biased, as that term is defined in MCR 2.511(D), and sat in judgment of him. Further, Johnson claimed, he was excused from having recognized the bias during voir dire because Juror 457 was not forthcoming when questioned.

Given these facts and arguments, it is incumbent on this Court to examine whether, if at all, Juror 457 was biased within the meaning of MCR 2.511(D) in order to determine whether there were grounds for a new trial under MCR 6.431(B). The lead opinion, however, defines the issue on appeal solely in terms of what Juror 457 said during voir dire.[43] In doing so, the lead opinion eschews any meaningful examination of whether Juror 457 could be considered biased because she was subject to removal for cause under MCR 2.511(D). The lead opinion observes in a footnote that Juror 457 eventually refused to cooperate with the prosecution against her abuser. I am not persuaded that Juror 457's level of cooperation with the

---

[43] *DeHaven* and *Hannum* involved jurors who either lied or failed to reveal pertinent information during voir dire. The Supreme Court, in framing the issues addressed in those appeals, did not attempt to rationalize, explain, or dissect the jurors' statements. The Court addressed the substance of those statements to explain why those jurors could not act impartially and to show that no additional questioning during voir dire would have made a difference in the case.

prosecution against her abuser obviates the interest she unequivocally had in the other case, much less obviates that interest to an extent that excuses this Court from examining the legal basis for this appeal.

I also note that MCR 2.511(D) as a whole does not require a venire member to have an improper purpose in failing to reveal biases in order to conclude that the jury's verdict is subject to reversal.[44] The party challenging the venire member must prove that these biases do exist. In reality, Juror 457 may have had completely understandable reasons for withholding information during voir dire and obscuring the truth when responding to certain questions.[45] However, Juror 457 is not on trial in this case, and this Court does not need to resolve *why* she withheld certain pieces of information. The Court need only satisfy itself that the information that came to light by the time of the motion for a new trial reveals that she *could have been* challenged for cause had she revealed this information. Again, because the lead opinion does not address any of the four separate grounds under the court rule that Johnson cites, the lead opinion avoids having to address whether the facts of this case demonstrated that Juror 457 was biased. Minimally, and under a narrow reading of the court rule, Juror 457 could have been challenged for cause under MCR 2.511(D)(13) even if there were no other evidence that she had an inclination to be partial toward the prosecutor and against Johnson.[46] The

---

[44] See *DeHaven, supra* at 334.

[45] For instance, she may have feared that her abuser would harm her if he found out that she exposed his violent history in open court.

[46] Note that even though the trial court in *DeHaven* denied the motion for a new trial reasoning that any juror bias was in the defendant's favor,

fact that the information that Juror 457 was the complaining witness in the domestic violence case came out *after* voir dire merely excuses Johnson's failure to object to her presence on the jury at an earlier time and provides the basis for the proper legal analysis in this case.

### C. THE TRUTH

The lead opinion's second major premise, following on the heels of its conclusion that whether Juror 457 testified truthfully defines the legal issue, is that Juror 457 actually told the truth during voir dire. If this was not the whole truth, it was the only truth the lead opinion believes was necessary.

While there is no reason to believe that Juror 457 lied when she admitted that she had been assaulted, her response implied that she had been the victim of a crime only one time. Indeed, the trial court's follow-up question, asking whether "[b]y virtue *of that experience,* would you be thinking about that experience and would it interfere with your ability to listen to the facts of this case and decide this case from the evidence here,"[47] indicates that the trial court understood that Juror 457 had suffered only one previous assault. Yet Juror 457 failed to describe or mention the recent incident that led to the other Oakland County prosecution in which she was involved. Certainly, there was debate in the record concerning what occurred between Juror 457 and her abuser in

---

the Supreme Court nevertheless reversed. *DeHaven, supra* at 331, 334. This suggests that the question is not whether the bias favored one party over another, but simply whether there was bias.

[47] Emphasis supplied.

that case. This does not mean, however, that this threatening incident and the subsequent prosecution did not happen. Critically, the implication that Juror 457 had been the victim of only *one* crime simply was not true.

### D. THE "ADDITIONAL" TRUTH

The lead opinion distinguishes between "the truth" and "additional truth" by presuming, in effect, that defense counsel had a duty to read Juror 457's mind to learn about her personal experiences in order to ask her pointed questions that she could not evade. In this instance, the lead opinion is apparently endorsing a process that permits evasion in a proceeding that literally means to "speak *the* truth."[48]

While there are any number of questions that either the trial court or the attorneys in this case could have asked the venire members, there was no manifest need to engage in a far-flung fishing expedition and, under *DeHaven, Hannum,* and *Daoust,* no such effort is required. Rather, I think it sufficient if the trial court or defense counsel conducts a reasonably diligent inquiry into the potential for bias and the venire member in question who becomes a juror either minimizes or entirely fails to disclose facts that would have shown that member's "interest" in a similar issue in another case or matter.

In *DeHaven,* the trial court asked Haverdink, and presumably Bouws, open-ended questions that were quite similar to the questions Juror 457 was asked to

---

[48] See Black's Law Dictionary (6th ed) (defining voir dire, emphasis added).

answer here.[49] These nondirective questions asked the venire members in *DeHaven* and this case to reveal enough information about their personal lives that, had there been even a hint of bias, a reasonable person would have inquired further. In this case, when venire members gave some indication that they may have had an experience that would permit them to be challenged for cause, the attorneys or the trial court followed up with those individuals. The problem in *DeHaven* and in this case is simply that the respective attorneys and trial courts had no reason to believe that there was any further evidence of bias to discover. For instance, even though the trial court asked whether any of the venire members knew of a reason why they should not serve on the jury, Juror 457 never responded. Her statements during voir dire, including her statement that she had been assaulted, did not relate to this domestic violence incident and gave no clue to the trial court or the attorneys that further inquiry was necessary.

Given a reasonably diligent inquiry that seeks to discover bias, I see no legitimate reason to make voir dire an exhaustive questioning process that examines every event in a venire member's life from the moment of birth onward so that a defendant will be entitled to enforce his constitutional right to an impartial jury. Neither the court rules nor the Supreme Court precedents require such a process. This process would be, in any event, useless in discovering jurors who are unaware of their biases, jurors who intend to conceal their biases no matter how sophisticated and probing the questioning during

---

[49] *DeHaven, supra* at 330-331.

voir dire is, or jurors who develop biases after the jury is impaneled. However, only this sort of exhaustive questioning would have elicited evidence of Juror 457's interest in the other case, assuming she would have responded to a direct question about whether she was currently a complaining witness in another domestic violence case.

### E. PRESUMPTIVE IMPARTIALITY

The final element of the lead opinion's analysis relies on a presumption that Juror 457 was impartial, without ever addressing the evidence to the contrary. True, courts assume that jurors are impartial.[50] However, contrary to the lead opinion's suggestion, this is an assailable proposition, and a defendant may overcome this presumption by proving that a juror *is* partial.[51] In my view, the facts surrounding Juror 457's circumstances prove that she was biased within the meaning the court rules give to that term while articulating the grounds that serve as the basis for a challenge for cause. Though the record reflects that Juror 457 said that she could separate her feeling surrounding the one assault she mentioned during voir dire, she never said that she could keep her experience with domestic violence separate from her role as a juror.[52] Nor does her claim that she could be impartial hold any persuasive weight given the contrary evidence.[53]

---

[50] *People v Walker*, 162 Mich App 60, 63; 412 NW2d 244 (1987).

[51] *Id.*

[52] More to the point, *DeHaven, supra* at 332, makes clear that a juror is incompetent to determine her own impartiality. Common sense also dictates that the last person likely to admit bias is the biased person.

[53] *Id.* at 334.

The lead opinion's concern that defendants not be allowed to impeach the verdict rings hollow to my ear. Despite the clear statements to the contrary in *Daoust, DeHaven,* and *Hannum,* the lead opinion applies a rule of law that bars a defendant from ever seeking a new trial based on evidence of juror bias discovered after voir dire ends.[54] This is untenable to me. The unstated cost of such a rule of law is to allow tainted jury verdicts to stand by hiding the taint behind the presumption of impartiality. Not only would such a rule of law deny defendants the fair trials to which they are entitled, it would undermine the integrity of the judicial system. There is only a minuscule risk, if there is any risk at all, of defendants fabricating allegations of juror bias if voir dire is conducted with reasonable diligence. Whatever costs may be associated with allowing a defendant a new trial by a fair and impartial jury pale in comparison to the costs of ignoring a fundamental defect in the validity of a verdict rendered by a jury with one or more biased members.

### F. THE LEAD OPINION'S FOOTNOTES

The lead opinion states, see *ante* at 256, n 5, that "[w]hile a defendant may move for a new trial pursuant to MCR 2.611 [sic], we decline to hold that a defendant may challenge a juror for cause after the jury has rendered its verdict." See also *ante* at 253, n 3, in which the lead opinion states "granting defen-

---

[54] If the lead opinion is attempting to distinguish between a challenge to a juror's qualifications after the jury is sworn and after it renders a verdict, it does not make that point explicitly. Despite the reference to a verdict, I infer from the rest of the lead opinion that juror bias may be addressed *only* during voir dire.

dant a new trial under these circumstances, where he (1) neglected to exercise a challenge for cause, and (2) expressed satisfaction with the jury as impaneled, would be tantamount to allowing defendant to build error into the jury selection process." The lead opinion cites no authority for its conclusion, nor could it. Although *Daoust* primarily involved peremptory challenges, the broad holding in *Daoust* directly addressed challenges for cause in a situation in which information potentially affecting a juror's ability to act impartially was discovered after voir dire concluded and trial commenced.[55] The *Daoust* Court cited *Hannum* and *DeHaven* to support its holding that only when there is evidence of prejudice or the juror could have been challenged for cause is a defendant entitled to a new trial because both *Hannum* and *DeHaven* involved information about juror bias that came to light *after* voir dire, indeed, after the jury rendered a verdict, causing the defendants to move for a new trial.[56]

Again, *Daoust* did not discuss the grounds for challenge under MCR 2.511(D) with any depth because the case involved peremptory challenges. However, *Daoust* indisputably held that a defendant who can prove that a juror could have been challenged for cause participated in the verdict is entitled to relief. Rather clearly, this makes the grounds identified in MCR 2.511(D) relevant to a trial court ruling on a motion for relief, such as a new trial under MCR 6.431(B), based on allegations of juror bias.[57]

---

[55] *Daoust, supra* at 6.

[56] *Id.* at 9.

[57] *Id.* at 8-9.

The lead opinion states, see *ante* at 255, n 4, that I have suggested by "veiled implication" that Juror 457 was less than forthright and that I do a "great disservice" by criticizing Juror 457's choice of words with the benefit of hindsight. I can only emphasize again that Juror 457 did not disclose during voir dire that she was a complainant in a domestic violence case, which occurred in the same county, was prosecuted by the same division of the prosecutor's office, and was apparently pending at the same time as the voir dire. These are the facts, and no amount of judicial embroidery will change them. If there is any disservice being done here, I respectfully suggest that it is to the concept of a fair trial. I also note that by the very nature of appellate review, *all* the analysis of this Court is done through the use of 20/20 hindsight.

In the same footnote, *ante* at 255, n 4, the lead opinion suggests that a "necessary implication" of my argument is that there is a difference between assault and *domestic* assault and that my "persistence" in "maintaining this illusory distinction" is meritless. I see no such distinction, nor do I mention such a distinction, nor do I imply that such a distinction exists. The lead opinion's assertion to the contrary is simply wrong and nothing more need be said about it.

In essence, the lead opinion has announced its true holding in this case *sub silentio*, in a series of footnotes. In my view, that holding is contrary to *Daoust* and for all practical purposes overrules it. In so doing, the lead opinion transgresses MCR 7.215(H)(1), which requires that this Court follow a rule of law established in an earlier decision published on or after November 1, 1990. More importantly, the lead opinion ignores *DeHaven* and *Hannum*, which apply

directly to this case. In so doing, the lead opinion
effectively overrules these two cases as well. This
misapprehends our role as an intermediate appellate
court.[58]

### V. CONCLUSION

In sum, I believe that the proper analysis in this
case should focus on whether the trial court abused
its discretion in denying the motion for a new trial
because Juror 457 was subject to a challenge for
cause. Although the lead opinion builds on its initial
premise that the issue on appeal revolves around
whether Juror 457 told a narrowly defined truth dur-
ing voir dire, I conclude that each part of that analy-
sis misses the mark.

I must emphasize that, although it is possible to
read *DeHaven*, *Hannum*, *Daoust*, and MCR
2.511(D)(13) broadly, I think it wiser to employ a two-
part approach that would interpret the court rule in
light of the relevant case law. Under the first part of
such an approach, a party claiming entitlement to a
new trial because of juror bias under MCR
2.511(D)(13) revealed only after voir dire would be
required to establish what the issues were to be tried
in the case at bar, that a similar issue existed else-
where, and that the juror being challenged for cause
was "interested" in that other similar issue. Under the
second part of such an approach, the party would be
required to establish that the trial court or counsel
made a reasonably diligent inquiry designed to reveal
this bias. If the juror in question, in response to that

---

[58] See *Beasley, supra* at 559.

reasonably diligent inquiry, either minimized or entirely failed to disclose facts that would have shown that juror's "interest" in the similar issue in the other case or matter, then the party would be entitled to a new trial. Even under this rather narrow rule, I conclude here that the trial court abused its discretion by denying Johnson's motion for a new trial given the evidence of Juror 457's bias.

The right to a fair trial—though not a perfect trial—by an impartial jury is one of the central canons of our jurisprudence. Ensuring this right may be inconvenient or unpopular, particularly in circumstances where, as here, a defendant allegedly committed terrible acts and there is ample evidence of guilt. Nevertheless, to paraphrase another jurist in a different context, upon the right to a fair trial we have staked our all.[59] Therefore, I would reverse and remand for a new trial.

---

[59] Learned Hand, J., in *United States v Associated Press*, 52 F Supp 362, 372 (SD NY, 1943), wrote:

[N]either exclusively, nor even primarily, are the interests of the newspaper industry conclusive; for that industry serves one of the most vital of all general interests: the dissemination of news from as many different sources, and with as many different facets and colors as is possible. That interest is closely akin to, if indeed it is not the same as, the interest protected by the First Amendment; it presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. *To many this is, and always will be, folly; but we have staked upon it our all.* [Emphasis supplied.]