# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL DOUGLAS CARRICK,

Defendant-Appellant.

UNPUBLISHED
October 23, 2018

No. 336755
Chippewa Circuit Court
LC No. 15-001945-FC

Before: BECKERING, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant was convicted by jury of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(f) (personal injury to the victim and force or coercion is used to accomplish the sexual contact).[1] The trial court sentenced defendant to a prison term of 2 to 15 years and denied his motion for a new trial. We affirm.

On the evening of August 28, 2014, the victim went to the Monocle Lake Campground with her roommate EC, and EC's four-year-old daughter, S. They were visiting defendant, who was EC's grandfather, at his campsite. After S went to bed in defendant's camper, the others remained around the fire and consumed alcohol. The victim, who was 25 years old at the time, had 3½ beers between 10:00 p.m. and 1:00 a.m. She went to sleep around 1:00 a.m. in a bed at the back of the camper, and she was wearing long shorts, underwear, and a t-shirt. Sometime during the night, EC put S into bed with the victim and said that she was going to the store. The victim was later awakened when she felt something moving near her genital area. She saw defendant's shadowy figure at the end of the bed. Defendant's hand was inside her shorts, her underwear was moved to the side, and his finger was moving inside her vagina. In shock, the victim asked "who are you" several times, but she received no response. Defendant eventually removed his hand, got up, and walked back to his bed and went to sleep. The victim waited until she heard defendant snoring. She left the camper with S and returned to her nearby apartment

---

[1] Defendant was also charged with first-degree criminal sexual conduct, MCL 750.520b(1)(g) (the actor engages in sexual penetration with another person and the actor causes physical injury to the victim, and the actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless).

she shared with EC. The victim first carried S to the home of a neighbor and asked the neighbor to watch the child until either the police or EC arrived.

The victim walked back to the camper to retrieve her belongings. She woke defendant and confronted him about what he had done to her. According to the victim, defendant apologized to her and was unable to look her in the eye. The victim was concerned that she would suffer consequences if she reported the assault. She explained to police that she was abused as a child and "horribly molested," and she "had just gotten to the point where [she] was done looking over [her] shoulder." She told defendant that she would not tell anyone about the assault if he would buy her beer every weekend for the rest of her life. She testified that she told him this to "throw him off" and so he would "leave [her] alone."

About a month after the assault, the victim disclosed to her cousin what had happened, but she did not provide details. Her cousin encouraged the victim to talk to the cousin's mother (the victim's aunt). The victim explained the assault more fully to her aunt, who then took the victim to the police station, where she reported the assault to Sergeant Brad Clegg. The victim's testimony at trial was similar to the report provided by the victim to Clegg, with the exception that she did not mention to police that she had left the camper with S.[2] Instead, the victim told Clegg that she left the camper after the assault and walked around the lake before she returned to the camper.

Clegg interviewed defendant, who admitted that he had been drinking the night of the assault and that he did not remember a lot of detail about the night. Defendant remembered getting up to go to the bathroom and stated that he must have tripped over something and fell and "that's the reason he would have been at the foot of the bed." Defendant admitted to Clegg that he might have touched the victim accidentally, but not in the way that the victim described. As part of the investigation, Clegg inspected the camper and found defendant's version of events difficult to comprehend. Clegg testified that the camper was small, and if the door to the bathroom had been open as defendant described to him, it would have been impossible for him to fall on the victim.

## I. RIGHT TO AN IMPARTIAL JURY

Defendant first argues that he is entitled to a new trial because he was denied his right to an impartial jury. We review the trial court's decision on a motion for a new trial for an abuse of discretion and its findings of fact for clear error. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled outcomes. *People v Powell*, 303 Mich App 271, 276-277; 842 NW2d 538 (2013) (quotation marks and citation omitted). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

---

[2] The victim testified that EC had previously asked her not to involve S if she reported the assault to police.

Approximately nine months after sentencing, defendant moved for a new trial asserting, in part, that his private investigator had discovered that the victim's former coworker served on defendant's jury and had not disclosed her work relationship with the victim or the fact that they were "Facebook friends." Defendant argued that the juror was biased in favor of the prosecution, and that if his trial counsel had conducted a proper voir dire, he would have learned of the bias and challenged the juror for cause. The trial court denied defendant's motion for a new trial following an evidentiary hearing at which the juror and defendant's trial counsel testified.

A defendant has a constitutional right to be tried by an impartial jury. US Const, Am VI; Const 1963, art 1, § 20. A juror's failure to disclose information may warrant a new trial if the failure to disclose denied the defendant an impartial jury. *Miller*, 482 Mich at 548-549. "[J]urors are presumed to be . . .impartial until the contrary is shown." *Id*. at 550 (citation omitted). A defendant bears the burden to establish that the juror was not impartial or at least that the juror's impartiality was in reasonable doubt. *Id*.; *People v Rose*, 289 Mich App 499, 529; 808 NW2d 301 (2010). Even if a juror is properly excusable for cause,[3] "the proper inquiry is whether the defendant was denied his right to an impartial jury. If he was not, there is no need for a new trial." *Miller*, 482 Mich at 561 (holding that a new trial is not *always* required whenever a juror would have been excusable for cause).

Neither the prosecutor nor trial counsel asked prospective jurors whether they knew any of the witnesses in the case. When asked at the postconviction evidentiary hearing, the juror in question explained that she worked with the victim at a store for approximately one year. She was a "dock to stock" manager and worked early morning hours. The victim was a cashier who did little stocking, so they rarely interacted. The juror talked with the victim about "work stuff" and possibly had one or two casual conversations with the victim. The juror testified that the victim "seemed like a good kid" and that she did not have any conflicts with her. The juror acknowledged that she was "Facebook friends" with "almost everyone" from work because she used Facebook to communicate with employees. The juror, who was no longer employed at the store, testified that she was not good friends with the victim and that her only contact with the victim since she left her employment was to wish the victim a happy birthday when she received a notification from Facebook that it was the victim's birthday. The juror stated that there was "no possible way" that her prior relationship with the victim affected how she viewed the victim's credibility and that she was "able to put all of her prior experiences with the victim aside while watching the victim testify."

Defendant has not shown that the juror's failure to spontaneously disclose that she knew the victim denied him an impartial jury. By concluding that defendant failed to establish prejudice as a result of the juror's presence on the jury, the trial court found the juror credible

---

[3] MCR 2.511(D) provides, in pertinent part, that grounds to challenge a juror for cause include that the person "is biased for or against a party or attorney" or "shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the ultimate outcome should be." MCR 2.511(D)(2) and (3).

and that there was no evidence of actual bias. This Court defers to the trial court's findings because the trial court was in a much better position to judge the juror's credibility. See, e.g., *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). Accordingly, defendant has failed to establish the prejudice required to warrant a new trial. The trial court did not abuse its discretion in denying defendant's motion for a new trial on the ground that the juror failed to disclose that she knew the victim.

Defendant also raises a concurrent claim of ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show (1) that counsel rendered assistance that "fell below an objective standard of reasonableness" and (2) a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ." *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000) (quotation marks and citation omitted). Whether counsel was ineffective presents a mixed question of fact and constitutional law, which this Court reviews, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

Defendant argues that trial counsel was ineffective by failing to ask the prospective jurors whether they knew any of the witnesses, which resulted in trial counsel's failure to uncover the juror's bias and failure to challenge her for cause. "Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v Dowd*, 366 US 717, 723; 81 S Ct 1639; 6 L Ed 2d 751 (1961). Moreover, "an attorney's decisions relating to the selection of jurors generally involve matters of trial strategy, which we normally decline to evaluate with the benefit of hindsight." *Johnson*, 245 Mich App at 259 (citations omitted).

Defendant has failed to overcome the presumption that trial counsel's decision was a product of sound trial strategy. Trial counsel testified after sentencing that he felt that it "would not be a bad thing" to have jurors who were familiar with the victim because the victim had a reputation for being "flaky." As previously discussed, the record does not show, and the trial court did not find, that the juror was biased or that she was unable to judge the victim's credibility based solely upon her testimony and demeanor at trial. Although the juror acknowledged that she knew the victim, she testified that the relationship did not impact her ability to be a fair and impartial juror. In the absence of any evidence to dispute the juror's statement that she could render an impartial verdict, there is not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Toma*, 462 Mich at 302-303. Accordingly, defendant was not denied the effective assistance of counsel.

## II. OPINION TESTIMONY

Defendant next argues that Clegg gave improper opinion testimony when he testified about the behavior patterns of sexual assault victims and about the recall ability of intoxicated persons. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 116; 631 NW2d 67 (2001). Defendant did not object to Clegg's testimony at trial; therefore, this issue is unpreserved. We review unpreserved issues for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain error rule, three requirements must be met: (1) error must have occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. The third requirement generally requires a showing that the error affected the outcome of the lower court proceedings. *Id.*

Defendant first argues that Clegg's testimony about the "behavior patterns of typical sexual assault victims" was improper lay and expert opinion testimony under MRE 701 and 702, and that Clegg improperly vouched for the victim's credibility.

At trial, Clegg acknowledged that he had specialized training in sexual assault cases. He explained that "in my seventeen years of doing this job I've never had a sexual assault victim come forward when it happened right then." Additionally, Clegg explained that his understanding, "[t]hrough training and experience," was that sexual assault victims "remember things in blotches." He later informed the jury that "it's very common to have follow up information where subjects will recall different events." Clegg's testimony highlighted the victim's own behavior—she did not come forward right away, she could not remember every detail of the assault, and when she provided follow-up information, she recalled different events. Moreover, Clegg acknowledged that it was "very common in sexual assault and trauma victims to confront the person," which is exactly what the victim did in this case.

Because Clegg was not qualified as an expert, the admissibility of his testimony is properly governed under MRE 701, which provides the standard for lay opinion testimony. *People v Daniel*, 207 Mich App 47, 57; 523 NW2d 830 (1994). Opinion testimony by lay witnesses is permissible when that testimony is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. In addition, the lay opinion testimony must not be based in "scientific, technical, or other specialized knowledge" within the scope of MRE 702. An "expert" is "a witness qualified as an expert by knowledge, skill, experience, training, or education." MRE 702. Expert testimony by a witness is permissible when "the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," and "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." MRE 702.

This Court has held that a police officer may provide lay testimony regarding observations in a criminal matter and the "opinion [was] formed as a result of those observations." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), modified and remanded on other grounds 433 Mich 862 (1989). MRE 701, however, restricts this to matters that do not involve specialized knowledge. Here, Clegg testified "based on his experience and training." His testimony was "rationally based" on his perceptions of victims of trauma and sexual abuse and was presumably "helpful to a clear understanding of the witness' [sic] testimony or the determination of a fact in issue," i.e., the victim's conduct. MRE 701. Thus,

Clegg's testimony was admissible under MRE 701. The question is whether his testimony was also grounded in "scientific, technical, or other specialized knowledge," requiring that he be qualified as an expert under MRE 702.

Although Clegg's testimony was not a "technical or scientific" analysis, his understanding of trauma and sexual abuse victims was acquired through his training and experience as a police officer. See *People v Petri*, 279 Mich App 407, 416; 760 NW2d 882 (2008); *People v Dobek*, 274 Mich App 58, 76-79; 732 NW2d 546 (2007). Clegg's testimony was directly related to his own perceptions of the victim, concluding the victim exhibited behavior similar to sexual assault victims he has encountered or interviewed in the past. While Clegg's training and experience as a police officer contributed to his testimony, his opinion was based ultimately on the observations of the victim's behavior. The trial court was not required to qualify Clegg as an expert.

Nevertheless, a police officer can be qualified as an expert on the basis of his experience or training. See, e.g., *Petri*, 279 Mich App at 416. Clegg's testimony was limited to observations arising out of his training and experience as a police officer. *People v McLaughlin*, 258 Mich App 635, 658; 672 NW2d 860 (2003). Thus, he would have qualified as an expert for the purpose of making these observations. Clegg testified that in addition to his education he had specialized block training with respect to investigating cases involving sexual assault and interviewing sexual assault victims, that he is a senior MCOLES[4] instructor at Lake Superior State University, and that he is an adjunct professor at Lake Superior State University in the criminal justice program.[5] Because the record demonstrates that Clegg would have qualified as an expert witness with respect to the post assault behavior of sexual assault victims, any error would not be outcome determinative.[6]

---

[4] MCOLES is the acronym for Michigan Commission on Law Enforcement Standards.

[5] Defendant complains that there "was no testimony on how extensive" Clegg's training was, or the number of sexual assault cases he had worked on. Had defense counsel objected to Clegg's testimony, presumably the prosecutor would have inquired further into Clegg's training and the extent of his investigations involving sexual assault victims.

[6] Defendant also argues that Clegg's testimony about the frequency of delayed disclosure improperly vouched for the credibility of the victim. In support of his argument, he cites only foreign authority. In Michigan, testimony about the behaviors of sexual assault victims is admissible where relevant and where it would assist the jury. See *People v Peterson*, 450 Mich 349, 375; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995). Defendant further argues that the testimony regarding delayed disclosure was misleading and more prejudicial than probative under MRE 403 because Clegg's testimony led the jury to believe that delayed disclosure is "universal." Defendant's characterization of Clegg's testimony is misleading. The officer testified that he, personally, had never investigated a case where the victim immediately reported the sexual assault. However, he qualified his answer when he testified that "I'm not saying that [immediate disclosure] doesn't happen[]."

Defendant also argues that Clegg's testimony about the recall abilities of someone who was formerly intoxicated constituted improper lay or expert opinion testimony. Defendant acknowledges that "what Clegg was really testifying to was his *experience* in questioning criminal suspects who were then-currently or formerly intoxicated." Clegg's testimony was not offered as expert opinion but, rather, was within the scope of permissible lay opinion testimony under MRE 701. His testimony was based on his personal observations and experience as a police officer conducting interviews of intoxicated persons, and did not go beyond his personal knowledge and experience, such that expert testimony on the subject was necessary. MRE 701; *McLaughlin*, 258 Mich App 657-659. The trial court did not plainly err by admitting the challenged testimony.

Lastly, defendant claims that trial counsel performed deficiently when he failed to object to Clegg's testimony. The testimony was not improper, and defense counsel was not ineffective for failing to make a futile objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (stating that counsel is not ineffective for failing to raise a meritless argument or futile objection).

### III. THE VICTIM'S STATEMENTS TO OTHERS

Defendant argues that the victim's statements to her cousin, her aunt, and Clegg were improperly admitted. By failing to object, defendant has not preserved for appellate review his claim that the witnesses should not have been allowed to testify regarding statements the victim made to them concerning the incident in question. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

According to MRE 801(c), hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is not admissible "unless it falls under one of the hearsay exceptions set forth in the Michigan Rules of Evidence." *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007); MRE 802. Statements admitted to show only their effect on the listener are not hearsay under the definition in MRE 801(c) because they are not admitted "to prove the truth of the matter asserted." Defendant concedes that the cousin's and the aunt's testimony regarding the victim's statements to them were not hearsay and were admissible under MRE 801(c) to show how it came to be that the victim reported her allegations to the police.

Defendant also argues that the prosecution improperly presented hearsay statements regarding the victim's allegations made to Clegg. However, defense counsel's strategy was to undermine the victim's credibility. Trial counsel told the jury during opening statements that "[y]ou're gonna hear from the alleged victim in this matter. And you're gonna hear that she has told numerous versions of what happened. . . . She's gonna testify contrary to what she told the police." Trial counsel told the jury that he did not believe that the prosecutor could prove the case beyond a reasonable doubt "because her testimony will be tainted and we want you to be very careful when you listen to her testimony and compare it with what she said many times." During trial, counsel pointed out the inconsistencies in the victim's original statement to Clegg

and her trial testimony. During closing arguments, trial counsel again pointed out the inconsistencies in the victim's stories to other people and her testimony at trial. He argued:

> In order for you to convict [defendant] of anything in this matter you have to believe [the victim's] testimony beyond a reasonable doubt. And you have to do that knowing that she has testified under oath and told a completely different story. She has told the police different stories. She's told her aunt a different story about how this happened. How can you possibl[y] base a conviction on the testimony of a person who change[s] the story at every turn?

The record clearly indicates that it was trial counsel's strategy not to object to testimony regarding the victim's inconsistent statements to others in order to use the statements in an attempt to undermine the victim's credibility. Defendant repeatedly asserts that this case presented a credibility contest. Under these circumstances, it was reasonable trial strategy not to object to the testimony, and defendant has not demonstrated plain error.[7] Similarly, because it was trial strategy to use the inconsistent statements to undermine the victim's credibility, defendant has not demonstrated that counsel's performance was deficient.

## IV. THE VICTIM'S PRIOR SEXUAL ABUSE

Defendant argues that evidence that the victim had been sexually abused as a child was admitted in violation of the rape-shield statute, MCL 750.520j. He also argues that the evidence was inadmissible under MRE 403 because it evoked sympathy for the victim. We review this unpreserved issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

The victim's challenged testimony was given in response to the prosecutor questioning her about why she told defendant she would not report the assault if he provided her with beer and why she initially left details about S out of the report she made to Clegg. She testified that she was "horribly abused as a child" and "horribly molested."

The rape-shield statute, MCL 750.520j, with certain specific exceptions, was designed to exclude evidence of the victim's sexual conduct with persons other than the defendant. *People v Arenda*, 416 Mich 1, 10-11; 330 NW2d 814 (1982). In *People v Adair*, 452 Mich 473, 480; 550 NW2d 505 (1996), the Court noted: "The rape-shield statute was aimed at thwarting the then-existing practice of impeaching the complainant's testimony with evidence of the complainant's prior consensual sexual activity, which discouraged victims from testifying 'because they kn[e]w their private lives [would] be cross-examined.' A complainant's sexual history with others is generally irrelevant with respect to the alleged sexual assault by the defendant." (Citations

---

[7] Further, because the victim testified at trial about the same allegations, the testimony was merely cumulative and did not prejudice defendant. See *People v Gursky*, 486 Mich 596, 620; 786 NW2d 579 (2010) ("Michigan law provides that where a hearsay statement is not offered and argued as substantive proof of guilt, but rather offered merely to corroborate the child's testimony, it is more likely that the error will be harmless.").

omitted.) Defendant has cited no authority that would prohibit a victim from willingly testifying that she was previously a victim of sexual abuse for the purpose of explaining why she acted as she did with respect to the circumstances surrounding a subsequent sexual assault. He has failed to establish plain error.

Defendant also argues that the evidence was highly prejudicial because it "undoubtedly injected consideration of sympathy into the trial" and, therefore, should have been excluded under MRE 403. MRE 403 permits the exclusion of otherwise admissible evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." MRE 403. Defendant has failed to offer any substantive analysis that would support a finding that the probative value of the evidence as was outweighed by danger that the jury would have sympathy for the victim, particularly where the victim offered no details about the prior sexual abuse. He has failed to show plain error and, even assuming that plain error occurred, he has not demonstrated that it is more probable than not that the error was outcome determinative. *Carines*, 460 Mich at 763-764.

## V. OTHER-ACTS EVIDENCE

Defendant argues that the prosecutor improperly introduced other-acts evidence under MRE 404(b) when the aunt testified that the victim told her that EC left the camper because defendant touched her chest. He also argues that the evidence should have been excluded under MRE 403. We review this unpreserved issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

Evidence of an individual's other crimes, wrongs, or acts is inadmissible to prove the character of an individual in an attempt to show action in conformity therewith. MRE 404(b). The challenged evidence was not offered for propensity purposes and, therefore, MRE 404(b) is not implicated. The prosecutor never questioned the victim or her aunt about defendant touching EC, and the prosecutor never mentioned defendant touching EC in the closing argument. Trial counsel was the only one to refer to the testimony of the aunt when he asserted during his closing argument that the victim's recounting of events was inconsistent and unbelievable.

Even assuming that the testimony was unfairly prejudicial under MRE 403, defense counsel did not object to the testimony given his clear trial strategy to undermine the victim's credibility with her inconsistent stories. Defense counsel's decision to downplay a defendant's prior conduct may be considered a matter of trial strategy. *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). Here, the reference to the other act in the above testimony was brief, largely innocuous, and used only by defense counsel to advance the defense trial strategy. Defendant has failed to establish plain error.[8]

_____

[8] While not raised on appeal, we note that evidence involving EC's departure from the camper could also have been admissible to rebut defendant's claim that he touched the victim on accident. Under MRE 404(b)(1), evidence of other crimes, wrongs, or acts is inadmissible unless an exception can be shown, such as proving the absence of mistake or accident. One of the

## VI.  CUMULATIVE ERROR

Finally, defendant argues that the cumulative effect of the alleged errors denied him a fair trial.  "The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal."  *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001).  The cumulative effect of the errors must have been seriously prejudicial in order to conclude that the defendant was denied a fair trial.  *Id*.  Moreover, the cumulative effect must undermine confidence in the reliability of the verdict before a new trial is granted.  *Dobek*, 274 Mich App at 106.  "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal."  *Id*.  Because defendant has not established that any errors occurred at trial, there can be no cumulative effect of errors to warrant reversal.  See *id*.

Affirmed.


/s/ Michael J. Riordan
/s/ Thomas C. Cameron

---

defense theories at trial was that defendant fell and accidentally touched her.  Evidence that defendant had inappropriately touched EC earlier that night tends to prove that defendant did not simply fall and inappropriately touch the victim.