*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

IEISHA TARRANT,

Defendant-Appellant.

UNPUBLISHED
December 10, 2020

No. 348470
Wayne Circuit Court
LC No. 18-001078-01-FC

Before: LETICA, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of tampering with evidence, MCL 750.483a(6)(b), lying to a peace officer during a violent crime investigation, MCL 750.479c(2)(d), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant to prison terms of 6-1/2 to 10 years for the tampering-with-evidence conviction, 2-1/2 to 4 years for the lying-to-an-officer conviction, and two years for each felony-firearm conviction. The court ordered the lying-to-an-officer and tampering-with-evidence sentences to be served consecutively to each other, and also ordered those sentences to be served consecutively to the two felony-firearm sentences, which were to be served concurrently with each other. We affirm defendant's convictions and sentences, but remand for modification of defendant's judgment of sentence to specify that defendant's sentence for lying to a police officer is to run concurrently with her felony-firearm sentences.

## I. FACTS & PROCEDURAL HISTORY

This case arises from the fatal shooting of defendant's boyfriend, Lavic Sharpe, on December 12, 2017. At the time of Sharpe's death, defendant and Sharpe were in the process of ending their relationship and defendant was staying with her father. On December 14, 2017,

---

[1] The jury was unable to reach a unanimous verdict on an additional charge of first-degree premeditated murder, MCL 750.316(1)(a), and the trial court declared a mistrial with regard to that charge.

defendant contacted the police and reported that she had discovered Sharpe's body in his home. At first, defendant told the police and others that Sharpe had committed suicide. The police found no evidence of forced entry and nothing of value appeared to be missing from the home, but the police were unable to find a gun, which caused them to doubt defendant's suicide claim.

When the police questioned defendant further, she told them that Sharpe was abusive, and on the day of his death, she and Sharpe had an argument, Sharpe obtained a gun, and when she tried to grab the gun, it discharged, killing Sharpe. According to defendant, she then panicked, grabbed her young daughter, and left the house. The medical examiner questioned defendant's account because Sharpe's injuries were not consistent with defendant's explanation. Sharpe had a large contact wound in the top of his head. A bullet hole was discovered in the wall to the left of where Sharpe had been standing, and a bullet was later recovered from the wall. Defendant eventually told the police that she placed the gun inside a garbage can at her father's neighbor's house. The police found a .45-caliber Taurus semiautomatic firearm in the neighbor's garbage and ballistics testing confirmed that it fired the bullet that was recovered from the wall in the home.

The prosecution's theory at trial was that defendant, who was romantically involved with another man, shot Sharpe two days before she contacted the police. Then she staged the scene, lied to the police, and tampered with evidence by removing and hiding the gun.

The defense presented evidence that Sharpe had a long history of physically abusing defendant and threatening her and others with guns. Defendant testified that on the day of Sharpe's death, she and Sharpe argued, he grabbed a gun, the two wrestled, and the gun accidently discharged. The defense also claimed that defendant was acting in self-defense because Sharpe told her that if he could not have her, no one else could. The defense conceded that defendant initially lied to the police, because the police had previously allowed Sharpe to retain his weapons after past incidents of violence against family members, which caused defendant to distrust the police. The defense emphasized defendant's cooperation in eventually disclosing the location of the hidden firearm.

When the jury foreperson initially read the verdict, he announced that the jury had found defendant guilty of second-degree murder, as well as the other offenses. When the jury was polled, however, one juror denied that she agreed with the verdict for the murder count and instead claimed that she believed defendant was guilty of only voluntary manslaughter. The trial court determined that the jury had not reached a unanimous verdict on the charge of first-degree murder and declared a mistrial with regard to that count. Defendant now appeals her convictions and sentences for the remaining counts.

## II. ANALYSIS

Defendant first argues that the trial court erred when it denied her request for the appointment of an investigator to assist with her defense. A trial court's decision on a request for the appointment of an investigator at state expense is reviewed for an abuse of discretion. *People v Johnson*, 245 Mich App 243, 260; 631 NW2d 1 (2001). The trial court has discretion to determine whether an indigent defendant has demonstrated that an investigator is necessary to ensure due process. See *People v Johnson*, 245 Mich App 243, 260; 631 NW2d 1 (2001). A defendant's reasons for requesting an investigator cannot rest on "pure conjecture." *Id*. To the

extent that defendant argues that failure to appoint an investigator violated her constitutional rights, that issue is reviewed de novo. *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018).

Here, the trial court denied defendant's request for appointment of an investigator because she was represented by retained counsel. Defendant argues that although counsel was retained, it was her father who retained counsel and she herself was indigent. She argues, therefore, that the trial court erred by denying her request for the appointment of an investigator. However, even assuming that defendant was indigent, she was not automatically entitled to the appointment of an investigator. Moreover, she did not provide any explanation to the trial court to justify her request. On appeal, she contends that defense counsel may have benefited from an investigator's assistance interviewing witnesses, but she does not identify any witnesses or testimony that she was not able to obtain without an investigator. Thus, her arguments rest on pure conjecture. *Johnson*, 245 Mich App at 260. Therefore, we reject this claim of error.[2]

---

[2] As defendant notes that in June 2018, our Supreme Court decided *Kennedy*, 502 Mich 206, which altered the standards that apply when an indigent defendant seeks financial assistance for the appointment of an expert. The Court adopted the standard set forth in *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985), which requires that such requests be analyzed under the Fourteenth Amendment's due-process guarantee of fundamental fairness to determine whether a defendant has been provided with the basic tools necessary to present an adequate defense. *Kennedy*, 502 Mich at 214-225. The Court held that under the due-process standard for the appointment of an expert at state expense, a defendant is required to "show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Kennedy*, 502 Mich at 228. Thus, the Court in *Kennedy*, 502 Mich at 226-228, adopted the test set forth in *Moore v Kemp*, 809 F2d 702, 712 (CA 11, 1987), cert den 481 US 1054; 107 S Ct 2192; 95 L Ed 2d 847 (1987), Accordingly, to succeed on a claim of error, "a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Kennedy* applies retroactively. *People v Propp*, 330 Mich App 151, 161; 946 NW2d 786 (2019), lv gtd ___ Mich ___ (2020) (Docket No. 160551).

This case involves a request for appointment of an investigator, not an expert. Although there is no apparent reason why the due-process rationale in *Kennedy* would not also apply to requests for the appointment of an investigator for an indigent defendant, we need not decide the issue here because defendant's claim fails under *Moore* as well. Defendant failed to justify her request for the appointment of an investigator by explaining why an investigator was needed to help prepare a defense. On appeal, she asserts that counsel might have benefited from the assistance of an investigator to interview numerous witnesses, but does not identify any witnesses whom she was unable to find or interview without an investigator. Defendant alludes to the fact that her defense was based in part a history of abuse by Sharpe that "had been ongoing for years before the shooting," and she asserts generally that an investigator was needed "in light of the vast number of witnesses whose memories and credibility were crucial to the case." However, this history of abuse involved defendant and other family members, whom defendant knew, and

Next, defendant argues that the evidence was insufficient to support her convictions of tampering with evidence and felony-firearm predicated on that offense. We disagree.

We review a challenge to the sufficiency of the evidence de novo. *People v Hammons,* 210 Mich App 554, 556; 534 NW2d 183 (1995). We must view the evidence in a light most favorable to the prosecution to determine whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Circumstantial evidence and any reasonable inferences that can be drawn from the evidence may be sufficient to prove the elements of a crime. *People v Abraham,* 234 Mich App 640, 656; 599 NW2d 736 (1999). We will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). "Any conflicts in the evidence must be resolved in favor of the prosecution." *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

Defendant argues that the evidence was insufficient to support her conviction of tampering with evidence because that charge was predicated on her act of hiding the gun, but at the time she hid the gun, a police investigation had not been initiated and there was no official proceeding pending against her and the police. We disagree.

MCL 750.483a(5) provides, in relevant part:

(5) A person shall not do any of the following:

(a) Knowingly and intentionally remove, alter, conceal, destroy, or otherwise tamper with evidence to be offered in a present or future official proceeding.

MCL 750.463a(11)(a) defines "official proceeding" as

a proceeding heard before a legislative, judicial, administrative, or other governmental agency or official authorized to hear evidence under oath, including a referee, prosecuting attorney, hearing examiner, commissioner, notary, or other person taking testimony or deposition in that proceeding.

Defendant's argument ignores the "present *or future* official proceeding" language in MCL 750.483a(5)(a). "It is incredible that any person would believe that a violent killing would *not*

---

defendant does not explain why an investigator was needed to determine what information these witnesses could provide. Indeed, defendant's father, brother, grandmother, and another relative, as well as defendant herself, all testified at trial regarding prior violent and abusive acts by Sharpe that they either experienced or observed. Defendant does not identify any witness with possible relevant information whose identity or whereabouts she was unable to determine, or whose testimony she was unable to present because she did not have the benefit of an investigator. Thus, even if an investigator could have assisted defense counsel in preparing for trial, there is no basis for concluding that denial of an investigator deprived defendant of a fundamentally fair trial.

certainly be the eventual subject of an official proceeding." *People v Walker*, 330 Mich App 378, 387-388; 948 NW2d 122 (2019) (emphasis in original). Sharpe died from a gunshot wound to the head and defendant removed and hid the firearm that she knew had been used to kill Sharpe. Although defendant testified that the shooting was accidental or committed in self-defense, the jury reasonably found that, based on the nature of Sharpe's death, defendant knew that Sharpe's death would lead to a future criminal proceeding and that she knowingly removed and concealed the gun, which would be offered in a future official proceeding. Accordingly, the evidence was sufficient to support defendant's conviction of tampering with evidence.

Defendant also argues that the evidence was insufficient to support her conviction of felony-firearm related to the predicate crime of tampering with evidence. Defendant relies on *People v Williams*, 117 Mich App 505, 514-516; 324 NW2d 70 (1982), in which we held that a felony-firearm conviction could not be based on a predicate crime of accessory after the fact involving hiding a gun. However, we are not bound by any rules of law announced in *Williams* because that case was decided before November 1, 1990. See MCR 7.215(J)(1). Moreover, in *People v Beard*, 171 Mich App 538, 545-547; 431 NW2d 232 (1988), we observed that felony-firearm does not require the actual use of a firearm during the commission of an underlying felony. Defendant's conviction of tampering with evidence was premised on her act of knowingly removing and concealing a firearm to be offered in a future criminal proceeding. In order to move and hide the firearm, defendant necessarily had to possess it. Accordingly, the evidence is sufficient to support defendant's conviction of felony-firearm related to the charge of tampering with evidence.

Defendant challenges the trial court's decision to order her sentences for tampering with evidence and lying to a peace officer to be served consecutively. We find no error.

A trial court's decision whether to impose a discretionary consecutive sentence is reviewed for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016). A consecutive sentence may be imposed only if specifically authorized by statute. *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012). MCL 750.483a(10) provides that when a person is convicted of tampering with evidence, "[t]he court may order a term of imprisonment imposed for a violation of this section to be served consecutively to a term of imprisonment imposed for any other crime including any other violation of law arising out of the same transaction as the violation of this section."

Defendant does not dispute that the trial court had authority to impose consecutive sentences, but argues that the trial court failed to justify its decision to impose consecutive sentences. When a statute grants a court discretion to impose a consecutive sentence, "trial courts imposing one or more discretionary consecutive sentences are required to articulate on the record the reasons for each consecutive sentence imposed." *Id.* at 665. In this case, the only discretionary consecutive sentence imposed was for the conviction of tampering with evidence, which the court ordered to be served consecutively to the sentence for the conviction of lying to a peace officer. The remaining felony-firearm convictions were subject to mandatory consecutive sentences. Accordingly, there was no need for the court to discuss multiple consecutive terms.

Contrary to defendant's assertion, the trial court provided adequate reasons for its decision to order the sentence for tampering with evidence to be served consecutively to the sentence for

lying to a police officer. When the court was asked about its decision to impose consecutive sentences, it stated that it considered the guidelines, as well as "the reasons that I have stated." In particular, the court considered the nature of the matter in which defendant tampered with evidence, noting that it involved a fatal shooting in which defendant attempted to conceal the gun used in the shooting, as well as to conceal the homicide itself. The court also considered that defendant had raised a claim of self-defense and that, although the jury was unable to reach a unanimous verdict for the murder charge, the record indicated that it had unanimously rejected defendant's claim of self-defense. In sum, MCL 750.483a(10) gave the trial court discretion to impose consecutive sentences and the trial court articulated on the record its reasons for the consecutive sentences imposed. *Norfleet*, 317 Mich App at 665. Defendant has not shown that the court abused its discretion by imposing consecutive sentences for the crimes of tampering with evidence and lying to a police officer.

However, the trial court erred by ordering her sentence for lying to a police officer to be served consecutively to her felony-firearm sentences. MCL 750.227b(3) requires that a defendant serve a sentence for felony-firearm consecutive to the sentence for the predicate felony. When a defendant is convicted of multiple felonies, however, a court is not permitted to order a felony-firearm sentence to be served consecutive to all sentences for other convictions. Rather, "[f]rom the plain language of the felony-firearm statute, it is evident that the Legislature intended that a felony-firearm sentence be consecutive only to the sentence for a specific underlying felony." *People v Clark*, 463 Mich 459, 463 n 9; 619 NW2d 538 (2000).

Defendant was convicted of two counts of felony-firearm. One count was predicated on defendant's possession of a firearm during the commission of the underlying felony of tampering with evidence. The second count was predicated on defendant's possession of a firearm during to commission of the underlying felony of murder. The jury found defendant guilty of the latter felony-firearm count, but it failed to reach a unanimous verdict on the underlying murder count. Accordingly, there was no underlying felony conviction and sentence for which that felony-firearm sentence could be served consecutively. Although defendant was not charged with felony-firearm related to the lying-to-a-peace-officer conviction, the trial court ordered defendant's sentence for that conviction to be served consecutively to the felony-firearm sentences. Because a felony-firearm sentence is to run consecutively only to the sentence for a specific underlying felony, and defendant was not convicted of felony-firearm with the predicate felony being lying to a police officer, the trial court erred by ordering her sentence for lying to a police officer to be served consecutively to the felony-firearm sentences. Accordingly, we remand for modification of the judgment of sentence to specify that defendant's sentence for lying to a police officer is to run concurrently with her felony-firearm sentences.

Defendant next argues that the trial court erred by departing from the sentencing guidelines minimum sentence ranges for her tampering-with-evidence and lying-to-a-peace-officer convictions and imposing sentences that are unreasonable and disproportionate. We disagree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a departure sentence for reasonableness, we must review "whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial

court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

The sentencing guidelines were separately scored for both the tampering-with-evidence and lying-to-a-peace-officer convictions, resulting in a guidelines range of 0 to 17 months for each conviction. The trial court exceeded these ranges and imposed a sentence of 6-1/2 (or 78 months) to 10 years for the tampering-with-evidence conviction and 2-1/2 to 4 years for the lying-to-a-peace-officer conviction. In imposing these sentences, the trial court stated:

> The Court did have an opportunity to preside over the jury trial in this matter and hear all of the testimony and received all of the evidence that was admitted.

> I have also had an opportunity to reviews [sic] the Pre-sentence Investigation Report prepared by the Department of Corrections.

> I've heard from both counsel as well as [defendant].

> As was pointed out, the homicide charge which is [t]he most serious charge, there was a mistrial due to a hung jury on that particular charge.

> Unanimity is required for a verdict, but the court cannot ignore the fact that the jury—the discrepancy between one juror and the other 11 was not on the issue of whether or not [defendant] committed—well, there is no issue with respect to whether or not [defendant] committed the shooting which caused Mr. Sharpe's death.

> The problem was that there was an issue as to whether or not it was voluntary manslaughter or second degree murder.

> I can take note that there was a rejection by the jury of the [d]efendant's defense of self-defense.

> However, she cannot be convicted on that and on either of the homicide charges because it has to be unanimous.

> However, I can still make that observation. It's not a situation where—well, she can have another trial.

> It may or may not result in a conviction on any homicide charge, but that doesn't change the fact that she was convicted of the remaining charges.

> All right. So, on the tampering with the evidence in the case in this situation, it was clear from the testimony adduced at trial that [defendant] did hide the gun that was used in killing Mr. Sharpe and had removed it from the scene and it remained hidden for at least two days as was the homicide itself concealed.

So, on the charge of tampering with evidence, I'm going to sentence [defendant] to a minimum of six and a half years to the 10 year maximum for that offense.

On the lying to police officer, you will [sic, be] sentenced to a minimum of two and a half years to a maximum of four years.

\* \* \*

*Defense Counsel*: Your Honor, are you considering the guidelines?

\* \* \*

*THE COURT*: Yeah, I looked at them, but I'm not—I am not bound by those and I don't think they're applicable in this instant situation for the reasons that I have stated.

Defendant suggests that the trial court improperly sentenced her on the basis of its independent finding that she was guilty of murder. The record does not support this argument. At the time defendant was sentenced, trial courts were permitted to consider a defendant's conduct in relation to other offenses for which the defendant was acquitted, if supported by a preponderance of the evidence. *People v Jackson*, 320 Mich App 514, 526 n 5; 907 NW2d 865 (2017), rev'd in part on other grounds 504 Mich 929 (2019); *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994). After defendant was convicted and sentenced, our Supreme Court held in *People v Beck*, 504 Mich 605, 609; 939 NW2d 213 (2019), that "[o]nce acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." However, *Beck* does not apply to this case because defendant was not acquitted of any conduct. Rather, the jury was unable to reach a unanimous verdict on the murder charge. Additionally, nothing in the trial court's comments indicate that the court believed that defendant was guilty of murder and sentenced defendant on that basis. Rather, the court was discussing defendant's proffered defense of self-defense and observed, accurately, that it was a matter of record that all 12 jurors believed that defendant committed either second-degree murder or voluntary manslaughter, which demonstrated its rejection of defendant's theory of self-defense.[3] The court also commented that defendant "may or may not" ultimately be convicted of a homicide charge, thereby reflecting its recognition that defendant could be acquitted of that charge, but observed "that doesn't change the fact that she was convicted of the remaining charges." Further, the court discussed that the tampering-with-evidence conviction involved defendant's removal and concealment of a gun used in a fatal shooting, but its discussion did not involve any commentary regarding defendant's guilt of any homicide offense. In sum, this case does not involve a trial court's consideration of acquitted conduct, and the trial court's comments at sentencing do not

---

[3] The trial court also instructed the jury on the defense of accident, which the jury also rejected by convicting defendant of two counts of felony-firearm, one of which was premised on the underlying felony of murder or manslaughter.

indicate that it believed that defendant was guilty of murder or some other homicide offense and sentenced defendant on the basis of that belief.

Furthermore, defendant's sentences are not unreasonable or disproportionate. Defendant's sentence for tampering with evidence involves the greatest departure from the sentencing guidelines range. That offense was subject to a maximum penalty of 10 years. MCL 750.483a(6)(b). Thus, under MCL 769.34(2)(b) (prohibiting a court from imposing a minimum sentence, including a departure sentence, that exceeds 2/3 the statutory maximum), the highest minimum sentence the court could have imposed was 80 months. Accordingly, the 78-month minimum sentence imposed for that conviction is below the most severe term possible.

As the trial court observed, however, the matter in which defendant tampered with evidence, and also lied to the police, involved a fatal shooting. Although defendant claimed that the shooting was accidental and that she acted in self-defense, she initially lied about the circumstances of the shooting and it was not until after the police confronted her with discrepancies in her account of the events and conflicts with other evidence that she advanced her claims of an accidental shooting and self-defense. Further, because of the unusual circumstances involving the jury's verdict, the trial court was able to determine that the jury unanimously believed that defendant caused the victim's death, that the shooting was not accidental, and that defendant did not act in self-defense. Defendant concealed her involvement in the shooting by initially claiming that Sharpe had committed suicide. Defendant emphasizes that she eventually cooperated and told the police where they could find the gun, but again, that did not occur until two days after Sharpe died and only after the police confronted defendant about the implausibility of her initial accounts of the shooting. The trial court was justified in finding that the guidelines ranges of 0 to 17 months did not adequately reflect the seriousness of the offenses. We are not persuaded that defendant's sentences are disproportionate to the seriousness of the circumstances surrounding the offenses.

## III. CONCLUSION

The trial court did not abuse its discretion or violate defendant's constitutional rights when it denied her request to appoint an investigator. Additionally, there was sufficient evidence to support defendant's convictions and her sentences were not unreasonable or disproportionate and the trial court adequately explained its reasons for imposing consecutive sentences. Accordingly, we affirm defendant's convictions and sentences, but remand for modification of defendant's judgment of sentence to specify that defendant's sentence for lying to a police officer is to run concurrently with her felony-firearm sentences. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Michael J. Riordan
/s/ Thomas C. Cameron