*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JASON THOMAS LEIST,

        Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 364312
Marquette Circuit Court
LC No. 2020-059343-FC

Before: SWARTZLE, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

In three incidents, defendant, Jason Thomas Leist, sexually assaulted his former girlfriend twice, threatened her with a gun and fired it in her presence, and chased her with an axe. For those actions, a jury convicted defendant on two counts of first-degree criminal sexual conduct (CSC-1), MCL 750.520b(1)(f), one count of discharging a gun in a dwelling, MCL 750.234b(2), two counts of assault with a dangerous weapon (felonious assault), MCL 750.82, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to serve 10 to 30 years in prison for each CSC-1 count, 2 to 10 years' imprisonment for the conviction for discharging a firearm in a dwelling, 257 days in jail for each felonious-assault conviction, and a consecutive two-year prison term for each count of felony-firearm. Defendant demands a new trial because the trial court did not sua sponte dismiss two jurors for cause. In the alternative, defendant asserts that his defense counsel was ineffective for failing to challenge those two jurors for cause. Defendant further claims that the trial court abused its discretion by imposing disproportionate sentences. We affirm.

## I. FACTUAL BACKGROUND

All three episodes underlying this case involved violent acts defendant committed against his former girlfriend, LC. When the incidents took place, defendant and LC were living together, but they were no longer in a romantic relationship and they slept in separate bedrooms. According to LC, defendant was an alcoholic whose drinking had become steadily worse. LC testified that she was scared of defendant and that he had threatened her on many occasions.

The first incident, which formed the basis for one of the two CSC-1 convictions, occurred in late May 2020. Defendant asked LC to engage in sexual acts, but LC refused. Later that night while LC was asleep in her own separate bedroom, she woke up to defendant rolling her onto her back. Defendant then straddled her, removed her pants and underwear, and penetrated her vagina with his penis while LC cried. When LC told defendant "no" and that "there's a reason we sleep in two separate bedrooms," defendant responded by saying "this is my house."

The second incident several days later, which led to convictions for discharging a firearm in a dwelling, both convictions for felonious assault, and both convictions for felony-firearm, also took place at the house that LC and defendant shared. Defendant became extremely agitated. He brandished a gun and pointed it at LC before firing it into a different room. LC was terrified and thought she was going to die. After firing the gun, defendant picked up an axe and began chasing LC, swinging the axe at her feet and hitting the ground. The incident ended when LC was able to take refuge in a bedroom and lock the door.

A few days later, in the incident that resulted in the second CSC-1 conviction, LC went to bed and was awakened to defendant on top of her trying to remove her clothes. LC asked defendant what he was doing and he responded that it would be over "real quick." Defendant penetrated her vagina with his penis while LC cried. After the sexual assault, defendant told LC that it was okay and that she could "stop crying now."

All of the charges were tried to a jury. During voir dire, Juror No. 10 stated that he worked "for corrections" as a plumber. Juror No. 10 explained that this position required him to interact with inmates on occasion, including when he unclogged toilets. When asked if there was anything about that job that would prevent him from being fair and impartial, Juror No. 10 responded, "No." In response to a follow-up question from the prosecutor, Juror No. 10 once again indicated that he did not believe his employment would cause him to be biased in any way. As voir dire continued, Juror No. 4 stated that, 25 years ago, he had been a witness in a case in which his ex-girlfriend was convicted of killing her mother, father, and brother. Juror No. 4 described his interaction with law enforcement officers during that case, commenting that the officers were "very thorough" and that his lasting impression was that the officers were "really motivated" to solve the case. Neither party challenged Juror No. 4 or Juror No. 10, and both jurors served on defendant's jury.

After the jury returned its verdicts, the trial court held a sentencing hearing at which defense counsel asked that defendant be sentenced at the "low end of the guidelines" for all convictions. Defense counsel emphasized that, since the crimes occurred, defendant had stopped drinking and had attended counseling. He had not violated his bond conditions during the pendency of the case, which lasted for several years as a result of Covid-19-related delays. Defense counsel argued that although defendant's drinking was not an excuse for what happened, it did contribute to his actions. Defense counsel also represented that defendant suffered from anxiety, which prevented him from participating in the presentence-investigation process, so defense counsel requested that that lack of participation not be held against defendant.

The prosecution asked the trial court to adopt the sentencing recommendations for the two CSC-1 convictions set forth in the presentence investigation report (PSIR). But the prosecutor did not make a request concerning the sentences for the other charges, as those sentences would likely be shorter than the prison terms imposed for the CSC-1 convictions. The prosecution emphasized

the victim's impact statement and explained that the crimes caused the victim trauma and pain that continued to affect her. The prosecution concurred that defendant had a problem with alcohol, but the prosecution contended that it would be insufficient to attribute all of the conduct to alcoholism and that defendant "needs help in terms . . . of the sex offender therapy, as well." The prosecutor emphasized that the offenses "were not just isolated incidents," but "were things that had occurred frequently over the course of their relationship[.]" The prosecution further stated that it was "hard to find positives here, again, because [defendant] did not participate in the presentence process," and asserted that although defendant may suffer from anxiety, the prosecution did not know if that was the case because of defendant's lack of participation.

In explaining the sentences it chose to impose, the trial court acknowledged that defendant had been out on bond for a "long time" and "did do pretty well on Pretrial Supervision." The trial court noted positive changes that defendant had made since committing the offenses of conviction. The trial court also recognized that defendant had addressed "some of the things that were pretty destructive factors," specifically citing defendant's improvement with respect to substance abuse. The trial court also accepted as credible defense counsel's statements about defendant's anxiety. The trial court stated that, because of that anxiety, it did not fault defendant for failing to participate in the presentence process. The trial court weighed those mitigating factors against the aggravating factors, commenting that the positive changes defendant made did not help the victim, who had to deal with the long-term impact of the traumatic events she suffered at defendant's hands. The trial court stated that, because of defendant's offenses, the victim had to leave town and suffered from post-traumatic stress disorder that would last forever. The trial court also concluded that, although alcoholism was a factor, it did not cause defendant's crimes, and that many people who struggled with substance abuse did not commit crimes. Noting that the offenses of conviction were acts that defendant committed on multiple occasions, the trial court determined that a "significant sentence" was warranted.

For the CSC-1 convictions, defendant's recommended sentencing guidelines range was 81 to 135 months' imprisonment. The Department of Corrections recommended a minimum sentence of 120 months, which the trial court adopted in ordering defendant to serve 120 to 360 months in prison. For the conviction for discharge of a firearm in a dwelling, the recommended sentencing guidelines range was 19 to 38 months in prison. The Department of Corrections recommended a minimum sentence of 36 months, but the trial court imposed a lower sentence of 24 to 120 months' imprisonment. For the two felonious-assault convictions, defendant's recommended sentencing guidelines range was 2 to 17 months in prison. The Department of Corrections recommended a minimum sentence of 23 months, but the trial court sentenced defendant to serve just 257 days in custody. For the felony-firearm convictions, the trial court imposed statutorily mandated two-year sentences to run consecutive to the other sentences. Defendant then appealed of right.

## II. LEGAL ANALYSIS

On appeal, defendant first contends that he was denied the right to an impartial jury because the trial court failed to sua sponte dismiss two jurors for cause. Alternatively, defendant asserts that defense counsel was ineffective for failing to challenge those jurors for cause. Next, defendant claims that his within-guidelines sentences were disproportionate. We shall address each of those arguments in turn.

A.  CHALLENGES FOR CAUSE

Defendant faults the trial court for neglecting to sua sponte dismiss Juror No. 4 and Juror No. 10 for cause.  Defendant further insists that his defense counsel was ineffective for failing to challenge those jurors for cause.  Generally, this Court reviews de novo the constitutional question of whether a defendant was denied his constitutional right to an impartial jury.  *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012).  In order to be preserved for appeal, an issue must be raised before, addressed by, or decided by the trial court.  *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007).  During jury selection, defendant did not challenge the jurors, so the issue is unpreserved.  *Id*.  When a constitutional claim is not preserved, this Court's review is limited to a search for plain error that affected the defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights."  *Id*.  The third component requires a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings.  *Id*.  "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."  *Id*. (quotation marks, citation, and alteration omitted).

"[A] criminal defendant has a constitutional right to be tried by an impartial jury[.]"  *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008).  A trial court can ensure that a jury is impartial by conducting voir dire and removing biased jurors before impaneling the jury.  *People v Haynes*, 338 Mich App 392, 411; 980 NW2d 66 (2021).  The rules that govern impaneling of a jury are set forth in MCR 2.511 and MCR 6.412.  Under MCR 2.511(E) and MCR 6.412(D)(1), any party may challenge a prospective juror for cause.  Pursuant to MCR 6.412(D)(2), "[i]f, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel."  If a party "shows that a prospective juror falls within the parameters of one of the grounds enumerated in [MCR 2.511(E)], the trial court is without discretion to retain that juror, who must be excused for cause."  *People v Eccles*, 260 Mich App 379, 383; 677 NW2d 76 (2004) (citation omitted).  All jurors "are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence."  *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001) (citation omitted).  "This Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial."  *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000) (citation omitted).

Here, during voir dire, Juror No. 4 stated that he was a witness in a case in which his former girlfriend was convicted for killing her mother, father, and brother, and Juror No. 10 revealed that he worked as a plumber for the Michigan Department of Corrections.  Defendant contends, without substantive analysis, that Juror No. 4 and Juror No. 10 could not be impartial because their answers "were clearly problematic" and revealed their bias against defendant.  But defendant has failed to articulate how this information shows bias towards defendant, and such bias is not readily apparent to this Court.  Juror No. 4 agreed that there was no reason that he should not serve on the jury, and Juror No. 10 affirmatively stated that he believed he could be impartial and that he did not believe he was biased in any way.  On this record, defendant has failed to establish that the trial court erred when it did not sua sponte dismiss Juror No. 4 or Juror No. 10 for cause on the basis that they were

biased against him.  Accordingly, defendant has not met his burden of overcoming the presumption that Juror No. 4 and Juror No. 10 were impartial.  See *Johnson*, 245 Mich App at 256.

In the alternative, defendant claims his trial attorney was ineffective for failing to challenge Juror No. 4 and Juror No. 10 for cause.  "Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing US Const, Am VI; Const 1963, art 1, § 20.  "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.  Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise.  *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).  The defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).  If no *Ginther*[1] hearing was held, this Court's review is limited to errors that are apparent on the record.  *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

We are "disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror[,]" *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008), because this Court cannot see the jurors or hear their answers to voir dire questions, and "the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions." *Id*.  Further, defense counsel "is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

During jury selection, defense counsel not only exercised peremptory challenges, but also successfully challenged potential jurors for cause.  Despite defense counsel's willingness to make challenges for cause, defense counsel declined to challenge Juror No. 4 or Juror No. 10 for cause.  Although defendant characterizes that as ineffective assistance, defendant has not established the factual predicate for such a claim of ineffective assistance of counsel, i.e., that a cause challenge against either Juror No. 4 or Juror No. 10 would have been successful.  See *Hoag*, 460 Mich at 6.  Because there was no *Ginther* hearing, our review is limited to the scant record concerning the two jurors.  See *Payne*, 285 Mich App at 188.  Defendant has not established that a cause challenge to either one of those jurors would have been successful.  Defense counsel is not ineffective for failing to take a meritless position, see *Henry (After Remand)*, 305 Mich App at 141, so defendant's claim of ineffective assistance of counsel necessarily fails.

## B.  SENTENCE PROPORTIONALITY

Next, defendant contests his within-guidelines sentences as disproportionate to the offenses and the offender because the trial court failed to consider specific mitigating factors or provide the reasoning for the sentences imposed.  We review the reasonableness of a sentence for an abuse of discretion.  *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).  The proper inquiry is "whether the trial court abused its discretion by violating the 'principle of proportionality,' " *id*.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

at 459-460, which requires that sentences be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Id.* at 460. A proper sentence "should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). Trial courts may also consider other relevant sentencing criteria. *Id.*

Our Supreme Court recently addressed the appropriate review for sentences that fall within the applicable sentencing guidelines range, explaining that the sentencing guidelines are advisory and "appellate courts must review all sentences for reasonableness." *People v Posey*, 512 Mich 317, 351-352; 1 NW3d 101 (2023). For all sentences within the guidelines range, a presumption of proportionality exists and the guidelines are a "highly relevant consideration." *Id.* at 352, 359. Defendant bears the burden of demonstrating that a within-guidelines sentence is unreasonable or disproportionate. *Id.* at 359.

Here, defendant contends that he is entitled to resentencing because the trial court did not provide a sufficient explanation for the sentences imposed. But the trial court's justification of its sentences was adequate to facilitate appellate review. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). The trial court explained that, although defendant had made progress in the years between the commission of the crimes and the sentencing hearing, the seriousness of the offenses, which occurred on multiple occasions, coupled with the lasting and severe psychological damage to the victim, warranted "a significant sentence." Consequently, we are not persuaded by defendant's claim that the trial court failed to justify the sentences imposed.

Defendant also argues that his sentences were disproportionate because the trial court failed to consider his remorse, his potential for rehabilitation, and his "crushing anxiety." But defendant does not explain how the trial court should have accounted for his anxiety in setting his sentences. Moreover, the only mention of this anxiety appears to have come at the sentencing hearing, when defense counsel claimed that defendant did not participate in the presentence investigation because he had anxiety. But even then, defense counsel did not argue that the anxiety should be considered a mitigating factor. Defense counsel simply suggested that it should excuse defendant's failure to participate in the presentence investigation. The trial court accepted counsel's claim about anxiety as credible and thus did not hold defendant accountable for failing to participate in the presentence investigation. On appeal, however, defendant argues for the first time that his anxiety should have been considered a mitigating factor. We cannot fathom how defendant's anxiety should serve as a mitigating factor for the violent and terrifying crimes that defendant committed against LC, who suffered lasting psychological damage, so we emphatically conclude that the trial court did not err in failing to consider defendant's anxiety as a mitigating factor in sentencing when it was not even asked to do so.

Defendant also argues that the trial court failed to consider his rehabilitative potential. But contrary to defendant's claim, the trial court did consider that factor. By describing the important progress that defendant had made between the commission of the crimes and sentencing, including steps to address his alcoholism, the trial court did consider defendant's potential for rehabilitation. The trial court explained that defendant did well on pretrial supervision, but the trial court weighed that progress against the effects of defendant's crimes on LC and the lasting psychological impact she continued to suffer. Defendant has failed to explain how this consideration of his rehabilitative

potential was inadequate, so he has not convinced us that his sentences were disproportionate in light of his rehabilitative potential.

Finally, defendant contends that the trial court failed to consider his remorse as a mitigating factor. In a statement read by defense counsel at sentencing, defendant expressed remorse, stating that he was sorry that he had caused the victim "so much hurt" and that he hoped she could "find a sense of peace in [her] life." The trial court did not expressly consider this remorse, but that does not mean that the sentences imposed were disproportionate. Like the progress that defendant made between the commission of the crimes and the sentencing hearing, this remorse did not repair the psychological damage the victim suffered, which was clearly a principal concern of the trial court. The trial court did not act unreasonably in deciding that the seriousness of the offenses warranted significant sentences because it outweighed both defendant's remorse and the progress that he had made. Defendant has not overcome the presumption of proportionality that applies to his within-guidelines sentences, so he has not satisfied his burden of demonstrating that those sentences are unreasonable or disproportionate. See *Posey*, 512 Mich at 359. Therefore, the trial court did not abuse its discretion in setting defendant's sentences for his numerous crimes. See *Steanhouse*, 500 Mich at 459-460, 471.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Christopher P. Yates

-7-